**COMMONWEALTH of Pennsylvania, Appellee**

v.

**Hobson Lyle McKOWN, Appellant.**

Superior Court of Pennsylvania.

Argued March 6, 2013.
Filed Oct. 22, 2013.

Jason S. Dunkle, State College, for appellant.

Sean P. McGraw, Assistant District Attorney, State College, for Commonwealth, appellee.

Kelly S. Diffily, Philadelphia, for City of Philadelphia, amicus curiae.

* Former Justice specially assigned to the Superior Court.

1. We note with displeasure that Appellant's brief contains single-spaced text in violation of Pa.R.A.P. 124(a)(3). The trial court cau-

BEFORE: BENDER, SHOGAN and FITZGERALD *, JJ.

OPINION BY SHOGAN, J.:

Appellant, Hobson Lyle McKown, appeals from the judgment of sentence entered on September 1, 2011, in the Centre County Court of Common Pleas. On appeal, Appellant argues, *inter alia,* that a Pennsylvania resident who does not have a Pennsylvania license to carry a concealed firearm may carry a concealed firearm in Pennsylvania under the authority of a permit issued by another state that has a reciprocal carry agreement with Pennsylvania. For the reasons that follow, we affirm in part, vacate in part, and remand with instructions.[1]

The relevant facts of this case were set forth by the trial court as follows:

On September 2, 2008, [Appellant] Hobson McKown had an appointment at the offices of Magisterial District Justice Jonathan Grine for a court proceeding unrelated to this matter. (Transcript of Preliminary Hearing, p. 18). On that day, around one p.m., Justice Grine's office received a phone call from a man asking if the court provided a lock box for concealed guns. (*Id.* at 6). According to Jennifer Carson, an employee of Justice Grine, [Appellant] showed up at the court offices around an hour after this phone call and took pictures of the door, affixed to which was a sign stating that no weapons are allowed in the building. (*Id.* at 7).

[Appellant] returned to the court office around four p.m. for his appointment on an unrelated matter. (*Id.* at 18). At that point [Appellant] encoun-

tioned Appellant on this failure as well, and it admonished counsel to double space the text in his filings. *Commonwealth v. McKown,* 9 Pa. D. & C. 5th 183 (C.P.Centre 2009).

tered Robert Bradley, an officer with the State College Police Department, who was called to the offices after the one o'clock phone call. (*Id.* at 17). Officer Bradley met [Appellant] as he walked through the front door of the court offices. (*Id.* at 18). Officer Bradley asked [Appellant] if he was armed, and [Appellant] did not answer at first. *Id.* Then [Appellant] asked Officer Bradley if there was a check station on premises. (*Id.* at 19, 25). When Officer Bradley answered affirmatively, stating that he was checking for weapons, [Appellant] admitted he did have a gun in his pocket. *Id.* Officer Bradley retrieved the gun from [Appellant's] pocket. (*Id.* at 20). [Appellant] told Officer Bradley that he ([Appellant]) had a New Hampshire concealed carry permit, and that it was in his car. (*Id.* at 21). Officer Bradley did not attempt to retrieve the New Hampshire permit. (*Id.* at 27). [Appellant] was arrested and charged with carrying a concealed weapon without a permit and carrying a weapon inside of a court facility. The courthouse did not have a check station for weapons at the time of this incident. *Id.* at 26.

Prior to the incident, [Appellant] had a Pennsylvania concealed carry license, issued by Centre County Sheriff Denny Nau on January 19, 2007. (*Id.* at 29). Then on April 6, 2008, [Appellant] was involved in an incident for which he was cited criminally. Because of this citation, the Centre County Sheriff revoked [Appellant's] Pennsylvania license on April 14, 2008. A letter providing notice was mailed out the next day, April 15, 2008. (*Id.* at 30). However, according to a certified mail receipt, [Appellant] did not receive the revocation notice until April 29, 2008. (*Id.* at 31). Also on April 15, 2008, [Appellant] applied for a New Hampshire concealed carry permit,

which he subsequently received on May 19, 2008. (*Id.* at 55; Transcript of Habeas Corpus Hearing, p. 71). Under New Hampshire law, an out-of-state applicant for a concealed carry license must present a valid concealed carry license from his or her resident state. (Transcript of Preliminary Hearing, p. 52–53). After learning about the courthouse incident, and the revocation of [Appellant's] Pennsylvania license, New Hampshire officials stated they would take "action to suspend" [Appellant's] New Hampshire license. (*Id.* at 43).

A preliminary hearing was held before Centre County Magisterial District Justice Leslie Dutchcot on September 10, 2008. The three witnesses at this hearing were Jennifer Carson, Officer Robert Bradley and Centre County Sheriff Denny Nau, who testified regarding his knowledge of Pennsylvania gun laws. Justice Dutchcot found that there was a prima facie case against [Appellant], and the case was sent to the Centre County Court of Common Pleas.

On November 17, 2008 [Appellant] made an omnibus motion petitioning for, among other things, a writ of habeas corpus regarding the findings from the preliminary hearing. Judge Bradley Lunsford denied the habeas petition, but allowed [Appellant] to make an interlocutory appeal, which he did on January 19, 2010. The Superior Court subsequently declined to consider the appeal. Judge Lunsford also granted a Motion in Limine by the Centre County District Attorney. This motion states that, for the purposes of trial, [Appellant] did not have a valid license to carry a concealed firearm on the date of the courthouse incident, September 2, 2008. Judge Lunsford intended this motion to exclude any evidence that [Appellant] had a valid New Hampshire license. (*See*

Transcript of Habeas Corpus Hearing, p. 77–78).

On June 23, 2010, [Appellant] moved to recuse the Centre County judges, as Magisterial District Justice Jonathan Grine, a potential witness at trial, is the son of Centre County President Judge David Grine. Judge Thomas Kistler granted the recusal motion and the case was transferred to this court, for consideration by Judge Milliron. On September 8, 2010 [Appellant] filed his Motion to Suppress Evidence and on September 24, 2010 [Appellant] filed his Motion to Declare the Statutes Unconstitutional, which is the subject of this opinion. Briefs from both sides followed, the last of which was filed on November 29, 2010.

Trial Court Opinion (Judge Milliron), 3/18/11, at 1–3.[2] Judge Milliron denied Appellant's motion to suppress and motion to declare statutes unconstitutional.

A jury trial was held on June 2, 2011. At the conclusion of the trial, Appellant was found guilty of firearms not to be carried without a license pursuant to 18 Pa.C.S.A. § 6106(a)(1). On September 1, 2011, the Honorable Thomas King Kistler sentenced Appellant to two years of probation. Appellant filed a timely post-sentence motion seeking to have his conviction graded as a misdemeanor as opposed to a felony. Appellant's motion was denied in an order filed on January 20, 2012. This timely appeal followed.

On appeal, Appellant raises ten issues for this Court's consideration:

1. Did the trial court commit an error of law in holding that

18 Pa.C.S. § 6109 requires a Pennsylvania resident to have a Pennsylvania license to carry a concealed firearm in Pennsylvania and thereby cannot carry under the authority of a permit issued by another state that has a reciprocal carry agreement with Pennsylvania?

2. Did the trial court err in not applying a strict scrutiny test to review the facial challenges to the constitutionality of 18 Pa.C.S. § 6106?

3. Did the trial court err in not finding that 18 Pa.C.S. § 6106 was violative of Article 1, Sections 1, 21, and 25 of the Pennsylvania Constitution?

4. Did the trial court err in finding that 18 Pa.C.S. § 6106 was not facially violative of the Second Amendment to the United States Constitution?

5. Did the trial court err finding that 18 Pa.C.S. § 913 was not violative of Article 1, Sections 1, 21, and 25 of the Pennsylvania Constitution?

6. Did the trial court err in prohibiting McKown from challenging the revocation of his Pennsylvania license as being void ab initio for a failure to comply with statutory revocation requirements and thereby violated McKown's due process rights?

7. Did the sentencing court abuse its discretion in finding that hearsay testimony alone about one incident was sufficient to show that McKown had a "character and reputation" of being dangerous and thereby was not eligible for the reduction of the section 6106(a) charge available to people that were "otherwise eligible" to be licensed?

8. Did the trial court err in denying McKown's request for return of property where the property was not contraband, evidence of a crime, or otherwise

---

2. The record reveals that there are three separate trial court opinions in this matter, authored by different judges. We will identify these opinions in our discussion by the judge's name and date of the opinion.

prohibited by law or bail conditions to be returned?

9. The trial court erred in summarily denying McKown's motion for modification of bail and not reviewing appropriate bail release criteria.

10. Did the trial court abuse its discretion in denying McKown's request to close the courtroom from the public for the sentencing proceeding?

Appellant's Brief at 4–5.[3] We will address these issues in the order in which they were presented.[4]

■ Most of Appellant's arguments pertain to the Pennsylvania Uniform Firearms Act of 1995, 18 Pa.C.S.A. § 6101 *et seq.* ("the Act"). As noted by the Commonwealth,

The Act is "an exercise of the police power for the good order of society and the protection of the citizens," *Minich v. County of Jefferson,* 919 A.2d 356, 361 (2007) citing *Gardner v. Jenkins,* 116 Pa.Cmwlth. 107, 541 A.2d 406, *appeal denied,* 520 Pa. 620, 554 A.2d 511 (1988), whose provisions are designed to

provide support to law enforcement in the area of crime prevention and control without placing any undue or unnecessary burdens on law-abiding citizens with respect to the acquisition, possession, transfer, transportation or use of firearms, rifles, or shotguns for personal protection, hunting, target shooting, employment or any other lawful activity.

Act of June 13, 1995, P.L. 1024, No. 17 (Spec. Sess. No. 1), § 2 (H.B. 110). The General Assembly has made it clear that the Act

is not intended to discourage or restrict the private Ownership and use of firearms by law-abiding citizens for lawful purposes, or to provide for the imposition by rules or regulations of any procedures or requirements other than those necessary to implement and effectuate the provisions of this Act.

*Id.*

Commonwealth's Brief at 13.

In his first issue on appeal, Appellant claims the trial court erred in holding that Pennsylvania residents are required to have a Pennsylvania license to carry a concealed firearm while in this Commonwealth, and that Pennsylvania residents cannot carry a concealed weapon in Pennsylvania under the authority of a permit issued by another state. Appellant's Brief at 4. Appellant relies primarily on 18 Pa.C.S.A. § 6106(b)(15) in support of his argument. Because the issue requires interpretation of statutory language, our scope of review is plenary and our standard of review is *de novo. Commonwealth v. Gravelle,* 55 A.3d 753, 755 (Pa.Super.2012).

Generally, "any person who carries a firearm in any vehicle or any person who carries a firearm concealed on or about his person, except in his place of abode or fixed place of business, without a valid and lawfully issued license under this chapter commits a felony of the third degree" in Pennsylvania. 18 Pa.C.S.A. § 6106(a)(1). Indeed, Appellant concedes that a person in Pennsylvania must have a valid Pennsylvania license to carry a firearm in any

---

**3.** Appellant was not required to give notice to the Attorney General regarding the constitutional challenge because the Commonwealth is a party to this case. *Commonwealth v. Neiman,* 5 A.3d 353, 355 n. 2 (Pa.Super.2010) (citing Pa.R.A.P. Rule 521).

**4.** In reaching our decision, we have also reviewed and considered an *amicus curiae* brief submitted by the City of Philadelphia.

vehicle or concealed on his or her person. Appellant's Brief, at 9.

Despite this general requirement that a Pennsylvania license is required to carry a firearm in a vehicle or concealed on one's person, except in one's home or business, Appellant argues that a Pennsylvania resident may substitute a New Hampshire permit for a Pennsylvania license. Appellant's Brief at 10–11. In doing so, Appellant relies on one of the limited exceptions to section 6106(a), which are listed under 18 Pa.C.S.A. § 6106(b). This exception provides, as follows:

> (15) Any person who possesses a valid and lawfully issued license or permit to carry a firearm which has been issued under the laws of another state, regardless of whether a reciprocity agreement exists between the Commonwealth and the state under section 6109(k), provided:
>
>> (i) The state provides a reciprocal privilege for individuals licensed to carry firearms under section 6109.
>>
>> (ii) The Attorney General has determined that the firearm laws of the state are similar to the firearm laws of this Commonwealth.

18 Pa.C.S.A. § 6106(b)(15).

In response, the Commonwealth argues that the Attorney General has not determined that the firearm laws of New Hampshire are similar to the firearm laws of this Commonwealth, as required by section 6106(b)(15)(ii). Commonwealth's Brief at 14. The Commonwealth further argues that section 6106 must be read *in pari materia* with 18 Pa.C.S.A. § 6109, which provides as follows:

**Licenses**

**(a) Purpose of license.**—A license to carry a firearm shall be for the purpose of carrying a firearm concealed on or about one's person or in a vehicle throughout this Commonwealth.
**(b) Place of application.**—An individual who is 21 years of age or older may apply to a sheriff for a license to carry a firearm concealed on or about his person or in a vehicle within this Commonwealth. **If the applicant is a resident of this Commonwealth, he shall make application with the sheriff of the county in which he resides or, if a resident of a city of the first class, with the chief of police of that city.**

18 Pa.C.S.A. § 6109(a) and (b) (emphasis added). Commonwealth's Brief at 16. On either basis, the Commonwealth contends that Appellant's challenge fails.

■ At the outset, we note that the trial court concluded that Appellant's "New Hampshire permit was not validly or lawfully issued," and thus, he did not meet the requirements of section 6101(b)(15). Trial Court Opinion (Judge Milliron), 3/18/11 at 9. Stating that "under New Hampshire law, an out-of-state applicant for a concealed carry license must present a valid concealed carry license from his or her resident state," the trial court found that "[Appellant's] Pennsylvania license had been revoked the day before" he applied to New Hampshire. *Id.* at 2, 9.[5] Although we agree with the trial court, we decline to dispose of Appellant's first issue on this basis alone and, thus, address the remaining statutory arguments raised on appeal.

We begin our analysis of the statutes at issue by enumerating our approach to statutory interpretation. We note:

---

**5.** Although Appellant does not specifically challenge the trial court's ruling on this point in his Pa.R.A.P. 1925(b) statement of errors complained of on appeal, we decline to find waiver. We conclude that this issue is fairly subsumed within the first issue raised in Appellant's Pa.R.A.P. 1925(b) statement as it concerns reciprocal carry agreements with other states. *See* Statement of Matters Complained of on Appeal, 3/14/12.

(a) The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly. Every statute shall be construed, if possible, to give effect to all its provisions.

(b) When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit.

(c) When the words of the statute are not explicit, the intention of the General Assembly may be ascertained by considering, among other matters:

(1) The occasion and necessity for the statute.

(2) The circumstances under which it was enacted.

(3) The mischief to be remedied.

(4) The object to be attained.

(5) The former law, if any, including other statutes upon the same or similar subjects.

(6) The consequences of a particular interpretation.

(7) The contemporaneous legislative history.

(8) Legislative and administrative interpretations of such statute.

1 Pa.C.S.A. § 1921. Additionally, "[s]tatutes or parts of statutes are *in pari materia* when they relate to the same persons or things or to the same class of persons or things[,] . . . [and] [s]tatutes *in pari materia* shall be construed together, if possible, as one statute." 1 Pa.C.S.A. § 1932. Furthermore, "the General Assembly does not intend a result that is absurd, impossible of execution or unreasonable." 1 Pa.C.S.A. § 1922(1).

As an initial matter, we address the Commonwealth's argument that our Attorney General ·has not made the predicate finding that would entitle Appellant to the section 6106(b)(15) exception, *i.e.*, that the firearm laws of New Hampshire are similar to the firearm laws of this Commonwealth.[6] The Commonwealth is correct that, for purposes of section 6106(b)(15), New Hampshire is not among the "Category 2" states identified as having met this criteria concerning similarity of firearm laws on the Attorney General's website. Commonwealth's Brief at 15 (citing "Firearm Reciprocity Agreements (Categories of Firearms Reciprocity)" *www.attorney general.gov/crime.aspx?id=184* ).

Regardless, we cannot accept Appellant's construction of the other statutory provisions at issue. In responding to the Commonwealth's argument regarding 18 Pa.C.S.A. § 6109, Appellant claims that, because the first sentence of section 6109(b) uses the word "may," the balance of the subsection is optional. Appellant's Brief at 11. Such a reading is absurd. The word "may" is used to explain that an individual **may** wish to carry a concealed weapon in Pennsylvania. If a person wishes to carry a concealed weapon and if he is a resident of Pennsylvania, he **shall** make application to the county sheriff or chief of police if residing in Philadelphia. "[W]hen a statute contains the word 'shall,' it is 'by definition mandatory, and is generally applied as such.' " *In re A.B.*, 987 A.2d 769, 775 (Pa.Super.2009) (quoting *Chanceford Aviation Properties, L.L.P. v. Chanceford Tp. Bd. of Supervisors*, 592 Pa. 100, 923 A.2d 1099, 1104 (2007)). There is nothing optional with respect to whether a Pennsylvania license is required for a Pennsylvania resident who wants to carry a concealed weapon in Pennsylvania.

---

**6.** Pennsylvania has a firearms reciprocity agreement with New Hampshire pursuant to 18 Pa.C.S.A. § 6109(k). However, the requirements of section 6106(b)(15) apply regardless of whether a reciprocity agreement exists under section 6109(k).

Here, Appellant was a resident of Pennsylvania, and he did not have a valid Pennsylvania license.

Furthermore, nowhere does the statute provide that a Pennsylvania resident may substitute a foreign state's license. Appellant attempts to utilize the general language from section 6106(b)(15) that provides an exception to the crime of carrying a firearm without a license. We are not persuaded.

■ The Pennsylvania Rules of Statutory Construction state that the particular terms of a statute control the general terms, and the specific terms shall be construed as an exception to the general rule. 1 Pa.C.S.A. § 1933. Here, 18 Pa.C.S.A. § 6106(b)(15) uses the general term "any person," while 18 Pa.C.S.A. § 6109(b) pertains to the specific circumstance where a **resident of Pennsylvania** applies to carry a concealed firearm **within Pennsylvania.** As explained above, a resident of Pennsylvania who desires to carry a concealed firearm in Pennsylvania **shall** apply for licensure with the sheriff of the county in which he resides, or if a resident of Philadelphia, the chief of police. 18 Pa.C.S.A. § 6109(b). In construing the Act to give effect to all of its provisions, we hold that a Pennsylvania resident who does not have a valid Pennsylvania license issued under the Pennsylvania Uniform Firearms Act may not carry a firearm in a vehicle or concealed on or about his person in Pennsylvania under the authority of a permit issued by another state that has reciprocity with Pennsylvania. Accordingly, Appellant's claim fails.[7]

In Appellant's next three issues he argues that the trial court applied the wrong degree of scrutiny and that 18 Pa.C.S.A. § 6106 is unconstitutional on its face, violating both the Pennsylvania Constitution and the Second Amendment to the United States Constitution. Appellant's Brief at 14–23. As these issues are interrelated, we will address them together.

■ A plaintiff can succeed in a facial challenge to the constitutionality of a statute only by establishing that no set of circumstances exists under which the challenged statute would be valid, *i.e.,* that the law is unconstitutional in all of its applications. *Commonwealth v. Barnett,* 50 A.3d 176, 197 (Pa.Super.2012) (citing *Washington State Grange v. Washington State Republican Party,* 552 U.S. 442, 449, 128 S.Ct. 1184, 170 L.Ed.2d 151 (2008)).

Here, Appellant challenges 18 Pa.C.S.A. § 6106, the statute that restricts an unlicensed person from carrying a concealed firearm on his person or transporting a loaded firearm in a vehicle. Appellant's Brief at 14–21. He contends that the trial court erred in not applying a strict scrutiny test because a fundamental right is at issue. He specifically cites 18 Pa.C.S.A. § 6106(b)(8), which provides as follows:

**Firearms not to be carried without a license**

\* \* \*

---

7. The limitations of a New Hampshire Pistol and Revolver License as currently listed on the New Hampshire Division of State Police website further support this conclusion. As stated on the website, "[c]oncealed handgun licenses issued by the State of New Hampshire to out-of-state residents are ONLY valid within the State of New Hampshire or within a state **other than the licensee's home state** that reciprocally recognizes New Hampshire nonresident concealed carry licenses." "Support Services Bureau Permits and Licensing Unit Pistol and Revolver Licensing" *www.nh. gov/safety/divisions/nhsp/ssb/permitslicensing/ plupr.html* (bold emphasis added). The site further notes that, "[p]ossession of a [New Hampshire] license does not supersede any other state's laws or license requirements." *Id.*

**(b) Exceptions.**—The provisions of subsection (a) shall not apply to:

\* \* \*

(8) Any person while carrying a firearm **which is not loaded** and is in a secure wrapper from the place of purchase to his home or place of business, or to a place of repair, sale or appraisal or back to his home or place of business, or in moving from one place of abode or business to another or from his home to a vacation or recreational home or dwelling or back, or to recover stolen property under section 6111.1(b)(4) (relating to Pennsylvania State Police), or to a place of instruction intended to teach the safe handling, use or maintenance of firearms or back or to a location to which the person has been directed to relinquish firearms under 23 Pa.C.S. § 6108 (relating to relief) or back upon return of the relinquished firearm or to a licensed dealer's place of business for relinquishment pursuant to 23 Pa.C.S. § 6108.2 (relating to relinquishment for consignment sale, lawful transfer or safekeeping) or back upon return of the relinquished firearm or to a location for safekeeping pursuant to 23 Pa.C.S. § 6108.3 (relating to relinquishment to third party for safekeeping) or back upon return of the relinquished firearm.

18 Pa.C.S.A. § 6106(b)(8) (emphasis added). Appellant argues that "[w]hile a normal person is permitted to carry [a] firearm in public, in a non-concealed manner, without a license, section 6106 substantially infringes the fundamental right to bear arms in self-defense as the person is not permitted to carry a loaded firearm in the primary mode of transportation, a vehicle." Appellant's Brief at 15. Consequently, Appellant claims that "Section 6106 presents a substantial infringement on a person's right to bear arms as set forth in the Second Amendment to the U.S. Constitution and Article I, Section 21 of the Pennsylvania Constitution," and that the "courts are to apply [a] strict scrutiny test to determine whether the statute advances a compelling state interest." Appellant's Brief at 16 (quoting *Commonwealth v. Beshore,* 916 A.2d 1128, 1134 (Pa.Super.2007)).

In *District of Columbia v. Heller,* 554 U.S. 570, 128 S.Ct. 2783, 171 L.Ed.2d 637 (2008), the United States Supreme Court struck down a ban on handguns and a mandate that firearms kept in the home must be unloaded and disassembled or have a trigger lock affixed. The Court did not express which level of scrutiny was appropriate and instead concluded that the District of Columbia's firearm ban would fail constitutional muster under either intermediate or strict scrutiny. *Id.* at 629, 128 S.Ct. 2783. The Court, however, made clear that the right to keep and bear arms pursuant to the Second Amendment is not absolute, and that "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms." *Id.* at 626–627, 128 S.Ct. 2783.[8]

---

**8.** We observe that in *McDonald v. City of Chicago, Ill.,* —— U.S. ——, 130 S.Ct. 3020, 177 L.Ed.2d 894 (2010) (plurality opinion of Alito, J.), the Supreme Court stated that the Second Amendment's right to keep and bear arms applies to individual states by virtue of the Fourteenth Amendment. Again, however, there was no conclusion with respect to the level of scrutiny that should be applied to statutory firearms bans.

Prior to *Heller* being considered by the Supreme Court, it was addressed by the Circuit Court of Appeals for the District of Columbia. *Heller v. District of Columbia*, 670 F.3d 1244 (D.C.Cir.2011). In that appeal, the Court of Appeals concluded that intermediate scrutiny was appropriate. *Id.* at 1253. While we are not bound by decisions of inferior federal courts, we are persuaded that intermediate level scrutiny is proper. *See Commonwealth v. Doolin*, 24 A.3d 998, 1003 n. 5 (Pa.Super.2011) (stating that the holdings of federal circuit courts are not binding but may serve as persuasive authority in resolving analogous cases).

In *U.S. v. Marzzarella*, 614 F.3d 85 (3rd Cir.2010), the Third Circuit Court of Appeals also applied intermediate scrutiny to a federal statute which made it illegal to possess a firearm with an obliterated serial number. There the court noted: "Whether or not strict scrutiny may apply to particular Second Amendment challenges, it is not the case that it must be applied to all Second Amendment challenges. Strict scrutiny does not apply automatically any time an enumerated right is involved." *Id.* at 96. The Court in *Marzzarella* explained:

> The burden imposed by the law does not severely limit the possession of firearms. The District of Columbia's handgun ban is an example of a law at the far end of the spectrum of infringement on protected Second Amendment rights. *Heller*, 128 S.Ct. at 2818 ("Few laws in the history of our Nation have come close to the severe restriction of the District's handgun ban."). It did not just regulate possession of handguns; it prohibited it, even for the stated fundamental interest protected by the right—the defense of hearth and home. *Id.* But [the statute in question] does not come close to this level of infringement. It leaves a person free to possess any otherwise lawful firearm he chooses—so long as it bears its original serial number.

*Marzzarella*, 614 F.3d at 97.

Additionally, federal courts apply a two-pronged approach to Second Amendment challenges. First, the inquiry is whether the challenged law imposes a burden on conduct falling within the scope of the Second Amendment. *Marzzarella*, 614 F.3d at 89. "If it does not, our inquiry is complete. If it does, we evaluate the law under some form of means-end scrutiny. If the law passes muster under that standard, it is constitutional. If it fails, it is invalid." *Id.*

As noted above, the statute Appellant challenges here, 18 Pa.C.S.A. § 6106, only restricts an unlicensed person from carrying a firearm hidden on his person or carrying a loaded firearm in a vehicle. This provision does not prohibit a person from owning a firearm or from carrying a firearm, nor does it proscribe the transportation of a firearm in a vehicle. The statute requires only that the firearm be unloaded during transport in a vehicle and not be concealed on an unlicensed person's body. Here, the statute is limited; there is no sweeping ban as was the case in *Heller*. After reviewing the Court of Appeals and Supreme Court decisions in *Heller*, and after reviewing the decision in *Marzzarella*, we are persuaded that no error was committed by the trial court in applying intermediate scrutiny.

Additionally, we cannot agree that 18 Pa.C.S.A. § 6106 is unconstitutional under either the Second Amendment or the Pennsylvania Constitution.

The Second Amendment reads as follows:

### Right To Bear Arms

A well regulated Militia, being necessary to the security of a free State, the right

of the people to keep and bear Arms, shall not be infringed.

U.S. Const. Amend. II.

The portions of the Pennsylvania Constitution that Appellant alleges are violated by section 6106 are as follows:

**Inherent rights of mankind**

All men are born equally free and independent, and have certain inherent and indefeasible rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing and protecting property and reputation, and of pursuing their own happiness.

Pa. Const. Art. 1, § 1.

**Right to bear arms**

The right of the citizens to bear arms in defence of themselves and the State shall not be questioned.

Pa. Const. Art. 1, § 21.

**Reservation of powers in people**

To guard against transgressions of the high powers which we have delegated, we declare that everything in this article is excepted out of the general powers of government and shall forever remain inviolate.

Pa. Const. Art. 1, § 25.

 We point out that neither the Second Amendment to the United States Constitution, nor the Pennsylvania Constitution, bestows on any person the right to carry a concealed firearm or transport a loaded firearm in a vehicle. As noted above, the right to keep and bear arms is not absolute, and governmental restrictions on possession of firearms are permitted. *Heller*, 554 U.S. at 626–627, 128 S.Ct. 2783. Here, the statute in question, 18 Pa.C.S.A. § 6106, while falling within the scope of the Second Amendment, merely restricts hidden guns and the transport of loaded guns by those persons who do not have a license. We discern no error in the trial court's conclusion that, under intermediate scrutiny, section 6106 does not violate the Second Amendment or the Pennsylvania Constitution.[9] Trial Court Opinion (Judge Milliron), 3/18/11, at 5–6.

The restrictions in section 6106 serve to protect the public from persons who carry concealed firearms for unlawful purposes, an important governmental interest, and we agree with the trial court that this section is substantially related to the achievement of that objective. Any impact on the Second Amendment is narrowly tailored toward achieving the important governmental interest.

 Additionally, and with respect to the Pennsylvania Constitution, we note:

Probably the most important function of government is the exercise of the police power for the purpose of preserving the public health, safety and morals, and it is true that, to accomplish that purpose, the legislature may limit the enjoyment of personal liberty and property. It is also true, as stated in *Commonwealth v. Zasloff*, 338 Pa. 457, 460, 13 A.2d 67, 69, 128 A.L.R. 1120, that the police power has been juridically [sic] extended to many fields of social and economic welfare. But, as likewise there stated, the power is not unrestricted; its exercise, like that of all other governmental powers, is subject to constitutional limitations and judicial review.

*Gambone v. Commonwealth*, 375 Pa. 547, 101 A.2d 634, 636–637 (1954).

---

9. While we agree that intermediate scrutiny is appropriate, were we to analyze the statute under heightened scrutiny, section 6106 would pass constitutional muster under strict scrutiny as well. The law is narrowly tailored and necessary to the achievement of protecting citizens from individuals who carry concealed firearms or transport loaded firearms in a vehicle, which is a compelling state interest.

Pursuant to these police powers, we conclude that 18 Pa.C.S.A. § 6106 serves to protect the public from persons who would carry concealed firearms for unlawful purposes. This is an important governmental interest, and section 6106 is substantially related to the achievement of that objective. Thus, we discern no error in the trial court's conclusion that section 6106 does not violate the Pennsylvania Constitution.

In his fifth issue on appeal, Appellant purports to challenge the constitutionality of 18 Pa.C.S.A. § 913. However, Appellant was not convicted of violating section 913 and, therefore, he does not have standing to challenge its constitutionality. *Commonwealth v. Ciccola,* 894 A.2d 744, 747 (Pa.Super.2006). Accordingly, we will not address this issue.

Next, Appellant claims the trial court erred in prohibiting him from challenging the revocation of his Pennsylvania license for the failure to comply with statutory revocation requirements. Appellant claims the revocation was void *ab initio.* Appellant's Brief at 23.

■ Despite the language used in Appellant's brief, he actually attempted to challenge the April 2008 revocation of his Pennsylvania concealed carry permit at the June 2011 trial. Such a challenge was improper, and the trial court correctly prevented it.

In order to challenge revocation of a Pennsylvania concealed carry permit, a licensee must do so in the court of common pleas for the judicial district in which he resides. 18 Pa.C.S.A. § 6109(i). Appellant opted not to appeal the April 2008 revocation to the Centre County Court of Common Pleas. Rather, Appellant waited until his June 2011 trial to raise the revocation issue. In an analogous circumstance, the Commonwealth Court held that a collateral attack on an underlying criminal conviction was improper at an appeal

in the license revocation proceedings. *Radice v. Com., Dept. of Transp., Bureau of Traffic Safety,* 118 Pa.Cmwlth. 627, 545 A.2d 1005, 1008 (1988). Moreover, under the Pennsylvania Rules of Appellate Procedure, Appellant had thirty days from the date his license was revoked in which to file an appeal. Pa.R.A.P. 903. Because Appellant failed to challenge the revocation, his challenge was waived. The trial court correctly concluded that the issue of Appellant's revocation was not properly before the court. N.T., 9/1/11, at 95–96.

■ Next, Appellant argues that the trial court abused its discretion in finding Appellant was not otherwise eligible to carry a firearm and, thus, graded the offense as a felony under 18 Pa.C.S.A. § 6106(a). We point out that, in this issue, Appellant is challenging the legality of his sentence. *Commonwealth v. Coto,* 932 A.2d 933, 935 (Pa.Super.2007) (citing *Commonwealth v. Tustin,* 888 A.2d 843, 845 (Pa.Super.2005) (a claim of improper grading of offense is a challenge to the legality of the sentence)). Issues relating to the legality of a sentence are reviewed *de novo,* and our scope of review is plenary. *Commonwealth v. Infante,* 63 A.3d 358, 363 (Pa.Super.2013).

Section 6106(a)(2) provides as follows:

**Firearms not to be carried without a license**

**(a) Offense defined.—**

\* \* \*

(2) A person who is otherwise eligible to possess a valid license under this chapter but carries a firearm in any vehicle or any person who carries a firearm concealed on or about his person, except in his place of abode or fixed place of business, without a valid and lawfully issued license and has not committed any other criminal violation

commits a misdemeanor of the first degree.

18 Pa.C.S.A. § 6106(a)(2).

This Court has previously stated:

Instantly, upon review of the relevant statutes and the case law interpreting them, we conclude that the Legislature intended to establish an opportunity for a defendant to present mitigating factors at sentencing following a conviction under 18 Pa.C.S.A. § 6106(a), which the Commonwealth would then be free to attempt to rebut. Thus, we hold that the defendant carries the burden to prove, by a preponderance of the evidence, that the exception under Section 6106(a)(2) applies, utilizing some or all of the factors enumerated in 18 Pa.C.S.A. §§ 6105 and 6109.

*Coto*, 932 A.2d at 940. Here, the trial court concluded that Appellant was not otherwise eligible to possess a license to carry a concealed firearm and graded Appellant's offense as a felony of the third degree pursuant to 18 Pa.C.S.A. § 6106(a)(1).

Appellant attempted to establish that the "otherwise eligible" exception applied and introduced letters from people vouching for his good reputation. N.T., Sentencing, 9/1/11, at 90. Appellant argues that he was not convicted of any offense with respect to the April 6, 2008 incident. Appellant's Brief at 28–29.[10] However, the trial court explained:

In determining whether a defendant qualifies for the exception in 18 Pa. C.S.A. § 6106(a)(2) for persons "otherwise eligible" to possess firearms, this

Court must determine whether the defendant satisfied his burden of proof that he is entitled to the exception, utilizing the "factors enumerated in 18 Pa. C.S.A. §§ 6105 and 6109," *Commonwealth v. Coto*, 932 A.2d 933 (Pa.Super.Ct.2007). In the case *sub judice*, this Court remains convinced Defendant is not otherwise eligible to possess a firearm because pursuant to 18 Pa. C.S.A. § 6109(e)(1)(i), Defendant's "character and reputation is such that the individual would be likely to act in a manner dangerous to public safety." 18 Pa.C.S. § 6109(e)(1)(i). This finding is based on an incident that occurred on April 6, 2008. On this date, Defendant initiated an unprovoked assault on a person while highly intoxicated, and when a police officer placed him under arrest and queried whether he was armed, Defendant failed to reveal he had a concealed firearm on his person (tr. Sept. 1, 2011, pg. 40–41).

Trial Court Opinion (Judge Kistler), 1/18/12, at 4.

An individual whose character and reputation is such that he would be likely to act in a manner dangerous to public safety will not be issued a license to carry a concealed firearm. 18 Pa.C.S.A. § 6109(e)(1). Here, the individual who bore the responsibility to decide if an applicant was eligible for a license, Sheriff Nau, specifically testified in the negative with respect to Appellant. Sheriff Nau explained Appellant's license had been revoked after he struck a person while highly intoxicated. N.T., Sentencing, 9/1/11, at

10. Appellant also asserts that he did not lie about possessing a firearm on April 6, 2008. *Id.* at 26. Rather, Appellant argues that he was silent and refused to answer the police officer's questions. *Id.* Upon review, we point out that Appellant did not lie. Officer Sean Gorman testified that Appellant refused to answer when asked if he possessed a weapon. N.T., Sentencing, 9/1/11, at 69. Ultimately, this discrepancy is of no moment as the trial court aptly explained its rationale for declining to apply the "otherwise eligible" exception.

40. Sheriff Nau also testified that, had Appellant applied to have his license reinstated, he (Sheriff Nau) would have denied the request. *Id.* at 41. Despite Appellant's letters in support of his good reputation, we discern no error in the trial court's conclusion that, based on Appellant's prior behavior and the testimony of Sheriff Nau, Appellant was not otherwise eligible for a license.[11] Thus, there was no error in the grading of the charge.

 In his eighth issue on appeal, Appellant claims the trial court erred in denying his request for the return of property. The trial court imposed bail conditions stating: "Defendant is prohibited from possession of any firearms while on bail. All firearms in Defendant's possession are to be immediately surrendered to the Centre County Sheriff's Department." Release Conditions, 9/10/08. The record reflects that the sheriff's department seized eleven firearms, two Airsoft plastic-pellet pistols, two crossbows, four knives, and seventeen canisters of ammunition. Property Record, 9/10/08. The record further reflects that, following his conviction and sentencing, Appellant remains on bail pending appeal with the above bail conditions remaining in effect. Bail Conditions, 9/9/11.[12]

Appellant argues that the seized items that were not firearms should have been returned. Appellant's Brief at 30. We agree. The bail conditions required only the surrender of firearms. The Airsoft plastic-pellet pistols, crossbows, knives, and seventeen canisters of ammunition are not firearms, and as such, the sheriff had no authority upon which to seize them in the first place. Accordingly, we are constrained to conclude that the trial court erred in denying Appellant's motion for return of property. The order dated December 17, 2009 is reversed as to the Airsoft plastic-pellet pistols, crossbows, knives, and canisters of ammunition.[13]

In his ninth issue on appeal, Appellant claims the trial court erred in denying his motion for modification of bail. The focus of Appellant's argument is on the bail condition prohibiting him from possessing any firearms and the trial court's purported failure to place its reasons for imposing that condition on the record. Appellants' Brief at 31–32.

Prior to trial in this matter, on November 13, 2009, Appellant filed a motion to reduce bail. The trial court denied Appellant's motion in an order filed on December 17, 2009.

 Our rules of criminal procedure make it clear that bail may be modified by

11. Appellant also argues that the decision was based solely on hearsay. Appellant's Brief at 28. He is incorrect. Officer Gorman testified to what he witnessed on the night Appellant was arrested concerning Appellant's appearance, behavior, and demeanor. This testimony was not hearsay as it was not based on an out of court statement. Moreover, Sheriff Nau was familiar with Appellant, being the issuing authority and the person who revoked Appellant's license, and thus, he was testifying as to his opinion of Appellant based on the information provided. *See Harris v. Sheriff of Delaware County,* 675 A.2d 400 (Pa.Cmwlth.1996) (stating that testimony concerning statements by informants that the defendant was a known drug dealer

related to defendant's reputation and were admissible).

12. At multiple times throughout the proceedings, the trial court could have imposed additional bail conditions concerning the items that are not firearms, but it did not do so. Pa.R.Crim.P. 520, 521, 526, and 529.

13. We note that nothing in this opinion restricts the bail authority from imposing additional conditions should Appellant remain on bail, nor does it have any impact on any conditions of probation that may be imposed in the future.

the trial court upon motion of the defendant. Pa.R.Crim.P. 529. *That decision is left to the discretion of the court.* Pa.R.Crim.P. 523 sets forth factors to be considered in imposing bail:

**Release Criteria**

(A) To determine whether to release a defendant, and what conditions, if any, to impose, the bail authority shall consider all available information as that information is relevant to the defendant's appearance or nonappearance at subsequent proceedings, or compliance or noncompliance with the conditions of the bail bond, including information about:

(1) the nature of the offense charged and any mitigating or aggravating factors that may bear upon the likelihood of conviction and possible penalty;

(2) the defendant's employment status and history, and financial condition;

(3) the nature of the defendant's family relationships;

(4) the length and nature of the defendant's residence in the community, and any past residences;

(5) the defendant's age, character, reputation, mental condition, and whether addicted to alcohol or drugs;

(6) if the defendant has previously been released on bail, whether he or she appeared as required and complied with the conditions of the bail bond;

(7) whether the defendant has any record of flight to avoid arrest or prosecution, or of escape or attempted escape;

(8) the defendant's prior criminal record;

(9) any use of false identification; and

(10) any other factors relevant to whether the defendant will appear as required and comply with the conditions of the bail bond.

(B) The decision of a defendant not to admit culpability or not to assist in an investigation shall not be a reason to impose additional or more restrictive conditions of bail on the defendant.

Pa.R.Crim.P. 523. Moreover, Pa.R.Crim.P. 527 provides:

**Nonmonetary Conditions of Release on Bail**

(A) When the bail authority determines that, in addition to the conditions of the bail bond required in every case pursuant to Rule 526(A), nonmonetary conditions of release on bail are necessary, the categories of nonmonetary conditions that the bail authority may impose are:

(1) reporting requirements;

(2) restrictions on the defendant's travel; and/or

(3) any other appropriate conditions designed to ensure the defendant's appearance and compliance with the conditions of the bail bond.

(B) The bail authority shall state with specificity on the bail bond any nonmonetary conditions imposed pursuant to this rule.

Pa.R.Crim.P. 527.

■ Here, the trial court, after considering the relevant factors, proscribed Appellant's possession of firearms as a condition of bail and subsequently denied Appellant's motion to modify that condition. The trial court explained its decision as follows:

[T]he bail and non-monetary conditions are within the reasonable discretion of the magisterial district judge and this Court. [Appellant] walked into a courthouse with a loaded pistol in violation of Pennsylvania law, so a $10,000 secured bail was reasonable in this

Court's opinion. As noted earlier, [Appellant] was appearing at the magistrate court for unrelated summary charges stemming from an incident on the University Park Campus. When police arrived on scene, Appellant . . . was found to have a loaded Kel–Tec 380 on his person.

The Court reviewed Appellant's briefs with regard to his motions to modify bail, and found no convincing arguments as to why bail should be modified. Pennsylvania Rule of Criminal Procedure 529(C) does allow a Court of Common Pleas judge to modify bail set by a magisterial district judge; however they are not mandated to do so. When bail modification first came before the court in 2009, Appellant did not present any new evidence or factors as to how Appellant's status had changed since the magisterial district judge set bail. *See* Pa. R.Crim.P. 523. Also, under Pennsylvania Rule of Criminal Procedure 529(E), the reasons for modifying bail need to be stated on the record or in writing only when bail is modified. The Court did not modify bail at the hearing on December 17, 2009 and therefore did not have to state the reasons for denying bail [modification] on the record.

Trial Court Opinion (Judge Lunsford), 4/18/12, at 4–5.

The trial court noted that the crimes with which Appellant was charged involved violence and firearms possession and that Appellant brought a loaded gun to court concealed in his pocket. As such, we discern no abuse of discretion in the trial court's decision to deny Appellant's motion to modify bail. The firearm conditions were reasonable under the circumstances of the case at bar.

In his final issue, Appellant argues that the trial court abused its discretion in denying Appellant's request to close the courtroom to the public during sentencing. After review, we conclude that Appellant is entitled to no relief.

 Our standard of review of a trial court's decision to deny access to judicial proceedings is for an abuse of discretion. *Zdrok v. Zdrok,* 829 A.2d 697, 699 (Pa.Super.2003). "In this Commonwealth, the common law and the Pennsylvania Constitution support the principle that there is a presumption that all court proceedings are open to the public. This presumption extends to not only criminal and civil proceedings but also to juvenile dependency proceedings." *Id.* (citations omitted).

The trial court succinctly addressed this issue as follows:

At the beginning of Appellant's sentencing hearing, Appellant made an oral motion to close the hearing to the public and media. The motion was denied in open court. This Court maintains its decision to keep the courtroom open was not made in error.

The Pennsylvania Constitution explicitly guarantees the openness of the court system. Article one, section eleven of the Pennsylvania [Constitution] simply states: "[a]ll courts shall be open. . . ." Pennsylvania courts have elaborated that "there is a presumption that all court proceedings are open to the public." *Zdrok v. Zdrok,* 829 A.2d 697, 699 (Pa.Super.Ct.2003). Furthermore,

There are two methods for analyzing requests for closure of judicial proceedings, each of which begins with a presumption of openness—a constitutional analysis and a common law analysis. Under the constitutional approach, which is based on the First Amendment of the United States Constitution and Article I, Section II of the Pennsylvania Constitution, the

party seeking closure may rebut the presumption of openness by showing that closure serves an important governmental interest and there is no less restrictive way to serve that interest. Under the common law approach, the party seeking closure must show that his or her interest in secrecy outweighs the presumption of openness. *Id.* (quoting *In the Interest of M.B.*, 819 A.2d 59 (Pa.Super.Ct.2003)) (internal citations omitted).

In the case at bar, Appellant has failed to rebut the presumption of openness under both the constitutional and common law analyses provided for by Pennsylvania law. Appellant's request for closure does not satisfy the constitutional analysis because he did not present an important government interest in closure. Appellant's request also fails the common law analysis because his interest in secrecy, namely his desire to prevent the publication of evidence that could harm his campaign for magisterial district judge, does not outweigh the presumption of openness. This is not a case where the presumption of openness has been modified by the Pennsylvania General Assembly [sic] to protect particularly sensitive parties, such as incapacitated persons and juveniles. *See e.g.,* 20 Pa.C.S.A. § 5511. In fact, the public has a heightened interest in the openness of criminal proceedings involving candidates for elected government positions. For all these reasons, the Court maintains it did not err in keeping Appellant's sentencing hearing open to the public.

Trial Court Opinion (Judge Kistler), 3/23/12, at 3–4.

■ We agree with the trial court's assessment. Appellant's last-minute attempt to close the proceedings failed to meet any of the criteria for the closure of a Pennsylvania Court. Appellant's desire to have the proceeding closed was merely designed to serve his own self-interest. As such, we discern no abuse of discretion in the trial court's denial of Appellant's motion to close the courtroom to the public during sentencing.

For all of the reasons set forth above, we affirm Appellant's judgment of sentence, except with respect to Appellant's motion for return of property as it concerns the non-firearms that were seized. The underlying order denying the motion for return of property is vacated and remanded for the trial court to direct the return of the non-firearms.

Judgment of sentence affirmed in part and vacated in part. Case remanded with instructions. Jurisdiction relinquished.

FITZGERALD, J., files a Concurring Opinion.

## CONCURRING OPINION BY FITZGERALD, J.:

I respectfully concur in the result in what is the first case from this Court to address the right to bear arms since *District of Columbia v. Heller*, 554 U.S. 570, 128 S.Ct. 2783, 171 L.Ed.2d 637 (2008). The majority holds that because Appellant did not possess a valid and lawfully issued New Hampshire license, he did not fulfill the requirements of 18 Pa.C.S. § 6106(b)(15). Because I consider that dispositive, I would not resolve Appellant's other statutory arguments in support of his first issue, which I construe as dependent upon the existence of a valid license. Furthermore, with respect to Appellant's facial constitutional challenge to section 6106, in my view, a statute prohibiting the carrying of a concealed firearm without a license does not regulate conduct within the ambit of the Second Amendment to the United States Constitution and article I,

sections 1, 21, and 25 of the Pennsylvania Constitution.[1] *See Drake v. Filko,* 724 F.3d 426, 434 (3d Cir.), *petition for en banc reh'g denied,* (3d Cir. Aug. 27, 2013). I thus would not scrutinize the law through the lens of a means-end analysis. Assuming otherwise, however, I discern no constitutional impediment after applying a means-end analysis.

Initially, like the majority, I assume Appellant has standing to raise a facial challenge.[2] Second, I similarly assume that the Second Amendment confers an individual right to bear arms outside the home.[3]

I first address Appellant's constitutional challenge under the Second Amendment. "First, we ask whether the challenged law

imposes a burden on conduct falling within the scope of the Second Amendment's guarantee." *United States v. Marzzarella,* 614 F.3d 85, 89 (3d Cir.2010). If the law does not burden conduct within the scope of the Second Amendment, then the inquiry is complete. *Id.* Indeed, in an involuntary servitude case, the high court observed that a blanket prohibition on carrying a concealed weapon does not infringe the Second Amendment right to bear arms.[4] *Robertson v. Baldwin,* 165 U.S. 275, 281–82, 17 S.Ct. 326, 329, 41 L.Ed. 715, 717 (1897).

The statutory predecessor to 18 Pa.C.S. § 6106 was enacted in 1931.[5] Act of June 11, 1931, P.L. 497, No. 158.[6] Subsequent-

---

1. There are several differences between the Pennsylvania and United States Constitution's clauses promulgating the right to bear arms. *See generally* Robert E. Woodside, Pennsylvania Constitutional Law 163 (1985).

2. *See Commonwealth v. Davidson,* 595 Pa. 1, 18, 938 A.2d 198, 208 (2007) (commenting that "challenge to the constitutionality of a statute under the 'overbreadth' doctrine is generally limited to the First Amendment." (citation omitted)); *see also Caba v. Weaknecht,* 64 A.3d 39, 50 (Pa.Cmwlth.2013) (assuming appellant had standing to facially challenge 18 Pa.C.S. § 6109), *petition for allowance of appeal filed,* 256 MAL 2013 (Pa. Apr. 15, 2013).

3. *See Drake,* 724 F.3d at 431 (declining "to definitively declare that the individual right to bear arms for the purpose of self-defense extends beyond the home, the 'core' of the right as identified by" *Heller,* but recognizing "that the Second Amendment's individual right to bear arms *may* have some application beyond the home.").

4. "This tradition ['of bans on concealed carry of firearms' dates] back to 1813 and the following decades, at least in some Southern and border states, as well as in Indiana, and by the end of the 19th century the constitutionality of such bans had become pretty broadly accepted." Eugene Volokh, *Implementing the Right to Keep and Bear Arms for Self-Defense: An Analytical Framework and a*

*Research Agenda,* 56 UCLA L.Rev. 1443, 1516 (2009) (footnotes omitted); *see generally* Tracy B. Farrell, Annotation, *Constitutionality of State Statutes and Local Ordinances Regulating Concealed Weapons,* 33 A.L.R.6th 407 (2008).

5. Pennsylvania statutes regulating the carrying or use of firearms predate 1931. *See, e.g.,* Act of Dec. 24, 1774, 8 St. L. 410, Ch. 705, 1 Sm. L. 421, Ch. 703 (banning public discharge of firearms "at or near New Year's Day"); Act of Aug. 26, 1721, 3 St. L. 254, Ch. 246 (barring carrying of gun or hunting on lands other than on one's own land without license or permission).

6. We reproduce the pertinent sections below:

> Section 5. No person shall carry a firearm in any vehicle or concealed on or about his person, except in his place of abode or fixed place of business, without a license therefor as hereinafter provided.
> Section 6. The provisions of the preceding section shall not apply to [various categories of people].
> Section 7. The chief or head of any police force or police department of a city, and, elsewhere in this Commonwealth, the sheriff of a county, may, upon the application of any person, issue a license to such person to carry a firearm in a vehicle or concealed on or about his person within this Commonwealth for not more than one

ly, 18 P.S. § 4628 was enacted in 1939, which was essentially identical to the Act of June 11, 1931, P.L. 497, No. 158. Act of June 24, 1939, P.L. 872, No. 375, § 628. The present statute, 18 Pa.C.S. § 6106, is substantially similar to the original 1931 statute. *See* 18 Pa.C.S. § 6106(a)(1)-(2). Thus, the modern Pennsylvania license requirement has been codified for more than eighty years.

In *Drake*, the Third Circuit addressed the constitutionality of a New Jersey statute that required an individual to demonstrate a "justifiable need" for a license to carry a firearm in public for self-defense. *Drake*, 724 F.3d at 431–33. The appellants challenged the statute on, *inter alia*, the basis that "the Second Amendment secures a right to carry arms in public for self-defense." *Id.* at 428. The *Drake* panel initially noted that "certain longstanding regulations are 'exceptions' to the right to keep and bear arms, such that the conduct they regulate is not within the scope of the Second Amendment." *Id.* at 431 (emphasis added). The New Jersey statute, the *Drake* Court observed, was one of those longstanding regulations, having existed in various forms for almost ninety years. *Id.* at 432. Based upon such historic precedent in New Jersey and other states, the *Drake* panel held the following: "[T]he 'justifiable need' standard of the Handgun Permit Law is a longstanding regulation

that enjoys presumptive constitutionality under the teachings articulated in *Heller* and expanded upon in our Court's precedent. Accordingly, it regulates conduct falling outside the scope of the Second Amendment's guarantee." *Id.* at 434 (emphasis added). Furthermore, the Third Circuit held that, regardless, the statute withstood intermediate scrutiny. *Id.* at 440. The Third Circuit, however, has not answered the question of whether, post-*Heller*, Pennsylvania can require a license to carry a concealed firearm in public.

Our Commonwealth Court, however, has answered that query.[7] In *Caba*, the appellant challenged the constitutionality of 18 Pa.C.S. § 6109 under both the United States and Pennsylvania constitutions.[8] *Caba*, 64 A.3d at 50. The Commonwealth Court, prior to *Heller* and *McDonald*, had implicitly held that section 6109 was constitutional. *Id.* at 50–51 (discussing *Morley v. City of Phila. Licenses & Inspections Unit*, 844 A.2d 637 (Pa.Cmwlth. 2004)). The *Caba* Court held that "*Heller* appears to be consistent with our decision in *Morley*." *Id.* at 51. It further stated the following:

Neither *Heller* nor *McDonald* dealt directly with a challenge to a state's concealed carry law. We see nothing in either decision that causes us to rethink our precedent, upholding the constitutionality of Section 6109 of the Act. To

---

year from date of issue, if it appears that the applicant has good reason to fear an injury to his person or property, or has any other proper reason for carrying a firearm, and that he is a suitable person to be so licensed....

Act of June 11, 1931, P.L. 497, No. 158. The Legislature indicated that the law was "aimed and directed at the criminal who wants to go about carrying ... concealed on his person a deadly weapon." House Legislative Journal, at 2652–53 (Pa.1931) (publishing remarks for H.B. 1366).

7. "Although decisions of the Commonwealth Court are not binding on this Court, we may rely on them if we are persuaded by their reasoning." *NASDAQ OMX PHLX, Inc. v. PennMont Secs.*, 52 A.3d 296, 308 n. 7 (Pa.Super.2012) (citation omitted).

8. In addressing Mr. Caba's challenge, the *Caba* Court assumed the following: (1) he had standing; (2) the Second Amendment right to bear arms extends outside the home; and (3) section 6109 burdens conduct falling within the Second Amendment. *Caba*, 64 A.3d at 49, 52.

the contrary, the Supreme Court's decisions recognize that concealed carry laws, such as the scheme set forth in the Act, are presumptively valid even under a heightened standard of constitutional scrutiny.

*Id.* at 51–52 (citation omitted).

I conclude that section 6106 is substantively identical to its statutory predecessor, enacted in 1931. *Compare* 18 Pa.C.S. § 6106, *with* Act of June 11, 1931, P.L. 497, No. 158. I also agree with the rationale advanced by the Third Circuit in *Drake* and would hold that section 6106 is a longstanding regulation. *See Drake*, 724 F.3d at 434; *see also Peterson v. Martinez*, 707 F.3d 1197, 1201 (10th Cir.2013). Similar to the New Jersey "justifiable need" standard, which has existed for almost ninety years, Pennsylvania's license requirement for concealed firearms has existed in some form for over eighty years. *Compare Drake*, 724 F.3d at 432 (discussing history of New Jersey statute), *with* Act of June 11, 1931, P.L. 497, No. 158. In my view, section 6106 thus "regulates conduct falling outside the scope of the Second Amendment's guarantee." *See Drake*, 724 F.3d at 434. *But see Caba*, 64 A.3d at 51–52 (holding section 6109 burdened Second Amendment right to bear arms because it concluded that concealed carry laws "are presumptively valid even under a heightened standard of constitutional scrutiny."). I therefore find it unnecessary to resolve whether the statute withstands a facial challenge under the Second Amendment to the United States Constitution.[9] *See Marzzarella*, 614 F.3d at 89.

I next address Appellant's facial constitutional challenge under sections 1, 21, and 25 of article I of the Pennsylvania Constitution.[10] I focus on section 21, which has garnered little judicial attention.[11] As *Heller* acknowledged, the majority of nineteenth-century courts upheld bans on carrying concealed weapons. *Heller*, 554 U.S. at 626, 128 S.Ct. at 2816, 171 L.Ed.2d at 678. In *Wright v. Commonwealth*, 77 Pa. 470 (1875), our Supreme Court resolved the constitutionality of the Act of May 5, 1864, P.L. 823, No. 717, which banned the malicious carrying of concealed weapons in Schuylkill County. *Id.* at 471. The *Wright* Court, in a sparse decision, held the statute did not violate the clause enshrining the right to bear arms. *Id.*

In *Commonwealth v. Kreps*, 25 Dauphin Co. 335 (C.C.P. Dauphin 1922),[12] the defendant was convicted of carrying a loaded revolver within Harrisburg, in violation of the Act of April 12, 1873, P.L. 735, No. 810. *Id.* at 336. The defendant challenged the constitutionality of the Act. *Id.* The trial court recounted the history of the Pennsylvania right to bear arms and case law construing same. *Id.* at 337–42. Al-

9. Assuming otherwise, however, I agree with the majority's resolution of Appellant's facial constitutional challenge.

10. The Pennsylvania Constitutions of 1790, 1838, and 1874 contain clauses identical to the present section 21. Pa. Const. of 1874, art. I, § 21; Pa. Const. of 1838, [art. IX], § 21; Pa. Const. of 1790, art. IX, § 21.

11. *See generally* Ken Gormley, *et al.*, The Pennsylvania Constitution § 23.2 (2004) (discussing history of right to bear arms in Pennsylvania); David B. Kopel & Clayton E. Cramer, *The Keystone of the Second Amend-*

*ment: the Quakers, the Pennsylvania Constitution, and the Flawed Scholarship of Nathan Kozuskanich*, 19 Widener L.J. 277 (2010) (exploring historical origin of Pennsylvania's right to bear arms); Nathan Kozuskanich, *Defending Themselves: The Original Understanding of the Right to Bear Arms*, 38 Rutgers L.J. 1041 (2007) (discussing history of Pennsylvania Constitution's right to bear arms).

12. I acknowledge that decisions from the court of common pleas are not binding on this Court. *Barren v. Commonwealth*, 74 A.3d 250, 254 n. 2 (Pa.Super.2013).

though *Kreps* did not opine on the constitutionality of a statute criminalizing the unlicensed carrying of a concealed weapon, the discussion reinforces the longstanding historic recognition that regulating the right to bear arms does not necessarily question section 21.[13] *See id.; accord Heller*, 554 U.S. at 626, 128 S.Ct. at 2816, 171 L.Ed.2d at 678.

Having carefully considered historical precedent, I conclude that section 6106 does not question Pennsylvania's right to bear arms. Laws regulating the carrying of firearms predate the earliest incarnation of the Pennsylvania Constitution. *See, e.g.*, Act. of Aug. 26, 1721, 3 St. L. 254, Ch. 246. Over a century later, our Supreme Court stated that a law banning the carrying of concealed weapons was constitutional. *See Wright*, 77 Pa. at 471. In 1931, our legislature enacted a statute requiring a license to carry a concealed firearm, which has existed essentially unchanged for over eighty years. *See* Act of June 11, 1931, P.L. 497, No. 158. Similar to the *Drake* Court's reasoning, I opine that section 6106, as a long-standing regulation, enjoys presumptive constitutionality and regulates conduct outside the scope of article I, section 21 of the Pennsylvania Constitution. *See Drake*, 724 F.3d at 434; *cf. Caba*, 64 A.3d at 51 (holding section 6109 regulates conduct within scope of Second Amendment).[14] Because our Supreme Court held a statute banning the malicious carrying of a concealed weapon was outside the scope of section 21, *see Wright*, 77 Pa. at 471, I conclude that a statute regulating the carrying of a concealed weapon by requiring a license is also outside the scope of section 21. As I noted above, however, even ·assuming the challenged conduct falls within the scope of section 21, I agree with the result of the majority's means-end analysis. Accordingly, I respectfully concur with the majority.

---

**13.** I recognize that in *Commonwealth v. Ray*, 218 Pa.Super. 72, 272 A.2d 275 (1970), this Court held constitutional a statute requiring a license to carry a firearm in public. *Id.* at 77–78, 272 A.2d at 278 (quoting Act of July 30, 1968, P.L. 690, No. 228). Our Supreme Court, however, vacated that decision and quashed the appeal on other grounds. *Commonwealth v. Ray*, 448 Pa. 307, 312, 292 A.2d 410, 413 (1972).

**14.** The *Caba* Court did not explicitly discuss whether section 6109 regulated conduct within the scope of article I, section 21, but did opine that the statute did not infringe the "state right to bear arms." *Caba*, 64 A.3d at 53.