J-S43009-18

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| RUBEN RICHARD CRAIG | |
| Appellant | No. 1546 WDA 2017 |

Appeal from the Judgment of Sentence imposed April 28, 2017
In the Court of Common Pleas of Venango County
Criminal Division at No: CP-61-CR-0000480-2016

BEFORE: STABILE, DUBOW, and NICHOLS, JJ.

MEMORANDUM BY STABILE, J.: FILED NOVEMBER 30, 2018

Appellant, Ruben Richard Craig, appeals pro se from the April 28, 2017 judgment of sentence imposing concurrent terms of 54 to 120 months of incarceration for two charges of persons not to possess a firearm.[1] We affirm.

The record reveals that Appellant was forbidden to possess a firearm because of a 2004 conviction for aggravated assault. After receiving an eyewitness report and video surveillance of Appellant purchasing a shotgun, police executed a warrant on Appellant's home on June 8, 2016. Police recovered a fully loaded Mossberg twelve-gauge shotgun and a fully loaded Hi-Point .380 pistol registered to Appellant's then-girlfriend (and current wife)

_____

[1] 18 Pa.C.S.A. § 6105(a)(1).

and purchased in January of 2016. Police arrested Appellant and charged him with the aforementioned offenses.

The record also reflects that Appellant, while the instant prosecution was pending, faced charges of attempted homicide and aggravated assault in connection with a May 30, 2016 incident. Appellant claims that, on May 30, 2016, he was attacked near his home by his sister-in-law's boyfriend and five others. N.T. Hearing, 2/16/17, at 12-13. One of the assailants allegedly threatened to shoot up Appellant's house. Id. at 13. Appellant claims his actions on May 30, 2016 were in self-defense and that he obtained the shotgun at issue in this case because he believed he would need to defend himself. In the instant matter, Appellant attempted, unsuccessfully, to use the May 30, 2016 incident to support a defense of duress (18 Pa.C.S.A. § 309) or justification (18 Pa.C.S.A. § 501, et seq.).

The day before trial, Appellant presented a letter to the court stating that he and his attorneys had reached a point of irreconcilable differences concerning trial strategy, and Appellant asked to represent himself. The trial court conducted a colloquy determined that Appellant made a knowing, intelligent, and voluntary waiver of his right to counsel, and entered an order permitting him to represent himself with his attorneys remaining as standby counsel. See N.T. Hearing, 2/16/17 at 18-27, 32; Trial Court Opinion, 2/16/17, at 1. Perhaps owing to his self-representation, Appellant failed to preserve many of the issues he now seeks to raise on appeal, and his trial

strategy was somewhat incoherent. For example, he introduced evidence that he was not in constructive possession of either firearm and that they belonged to his wife, but he also introduced evidence that he obtained a shotgun for self-defense after the May 30, 2016 incident. Over the trial court's warning that Appellant was opening the door to prior bad acts evidence, he examined one of the participants in the May 30, 2016 incident in detail.

In any event, trial took place on February 17 and 21 of 2017, and the jury found Appellant guilty on both counts of unlawful firearms possession. This timely pro se appeal followed. Appellant raises four assertions of error, which we quote verbatim:

I.   Can the Commonwealth establish constructive possession absent any evidence of intent to possess? Does the intent to possess, necessary to establish constructive possession, have to be an intent to personally possess the item? Does the Commonwealth still establish constructive possession if the defendant has access to a firearm, but only intends for the firearm to be used by a third party (legally able to possess said firearm)?

II.  Can a claim of self-defense be established absent evidence of fear of death or serious bodily injury, freedom from fault in continuing the situation, or inability to retreat? Does testimony of alleged prior bad act [sic]—in which the defendant critically stabbed another person—prove to be too prejudicial to the defendant?

III. Did the court properly limit the defendant's introduction of evidence for a defense of justification to evidence of only threats made to the defendant, or was defendant entitled to also present evidence of threats to others (namely, his wife)? Did the court properly limit the defendant's introduction of evidence for a defense of justification to evidence of only those threatening parties involved in a Memorial Day 2016 attack on the defendant, or was

- 3 -

> defendant entitled to also present evidence of other threatening figures for whom these parties acted as proxies for?
>
> IV. Does the Person Prohibited to Possess statute (18 Pa.C.S.A. § 6105) unconstitutionally deny defendant right [sic] to self-defense?

Appellant's Brief at 2 (pagination ours; emphasis in original).

The trial court issued two opinions in which it addressed all of Appellant's issues in detail. In its August 29, 2017 opinion addressing Appellant's post-sentence motion, the trial court thoroughly addresses Appellant's argument that he was not in constructive possession of either firearm. In its January 24, 2018 Pa.R.A.P. 1925(a) opinion, the trial court addressed Appellant's remaining arguments. We observe that Appellant raised thirteen issues in his Pa.R.A.P. 1925(b) statement, and the trial court's Pa.R.A.P. 1925(a) opinion addressed them in turn. Argument on most of those thirteen issues is interspersed throughout the four argument sections of Appellant's pro se brief. We have reviewed the parties' briefs, the applicable law, the record, and the trial court's opinions. We affirm the judgment of sentence based on the trial court's well-reasoned opinions of August 29, 2017 and January 24, 2018. The trial court's opinions explain that Appellant failed to preserve several of his arguments, and it addresses the lack of merit had Appellant preserved his issues. We direct that those opinions be filed along with this memorandum.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/30/2018

IN THE COURT OF COMMON PLEAS OF VENANGO COUNTY, PENNSYLVANIA

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | CRIMINAL DIVISION |
| | : | |
| v. | : | CR No. 480-2106 |
| | : | |
| RUBEN RICHARD CRAIG, | : | |

## OPINION OF COURT

AND NOW, *August* 29, 2017, the Court has for consideration the Defendant Ruben R. Craig's Motion for Post-Sentencing Relief. Craig requests relief from this Court's Order of Sentence rendered on April 28, 2017 pursuant to Pa. R.Crim.P. 720. For the reasons articulated below, said Motion is denied.

The Criminal Information prepared in this matter alleges Craig of committing two counts of Persons Not to Possess Firearms, 18 Pa. C.S.A. § 6105(a)(1), a Felony in the second degree. Specifically, with regard to Count 1, Craig was charged with having previously been convicted of Aggravated Assault and thereafter possessing a 12-guage Mossberg New Haven Shotgun. With regard to Count 2, Craig was charged with having previously been convicted of Aggravated Assault and thereafter possessing a .380 pistol. Following a jury trial at which he represented himself, Craig was found guilty of both charges on February 21, 2017. On April 28, 2017, the Court imposed identical and concurrent sentences on both Counts of fifty-four (54) to one hundred twenty (120) months' incarceration. The instant Post-Sentence Motion was filed on May 8, 2017. An interim request by Craig for post-sentencing discovery was filed on June 9, 2017, and denied by the Court on June 22, 2017.

The instant Motion asserts two distinct claims for relief: First, Craig requests that the Court vacate judgment for the reason that the Commonwealth failed to prove all elements of the

1

alleged offenses. Second, Craig requests a new trial on the basis of various alleged prejudicial trial errors. We address these claims in turn.

*Sufficiency*

With respect to the request to vacate judgment, Craig asserts that the "Commonwealth advanced an argument of constructive possession[,]" and that the "Commonwealth presented no evidence of intent to possess either [weapon]." Mot. ¶¶ 3-4 (emphasis original). Craig cites to *Commonwealth v. Florida,* 272 A.2d 476 (Pa. 1971) and *Commonwealth v. Schuloff,* 275 A.2d 835 (Pa. Super. 1971), arguing that "mere proximity is not enough to establish constructive possession, absent evidence of intent to possess." Mot. ¶ 5. Craig argues that his convictions are therefore "against the weight of the law[.]" *Id.*[1]

In *Florida,* several codefendants were arrested following a police raid of a "pot party," and were subsequently convicted of violating then-effective provisions of the criminal code which prohibited the "possession control, dealing in, dispensing, selling, delivery, distribution, prescription, trafficking in or giving of any dangerous narcotic drug." 272 A.2d at 477-478. In reversing each defendant's conviction, the Supreme Court reasoned as follows:

> The Commonwealth admitted at the trial that no marijuana was found on the person of any of the appellants, and that none of the appellants was observed smoking marijuana cigarettes. Under these circumstances, the basis of the Commonwealth's case was the legal theory of constructive or joint possession. The Commonwealth attempts to prove this by proof of the appellants at the scene, opportunity to commit or join in the possession or control of the marijuana, guilt by association, and suspicion or conjecture. Under the particular facts and circumstances of this case, this is not sufficient to prove beyond a reasonable doubt that these four defendants were guilty of the crimes for which they were indicted and convicted, namely, the possession or control of dope.

---

[1] We understand Craig's "weight of the law" claim to be, in essence, an argument that the Commonwealth failed to produce evidence legally sufficient to sustain his convictions. We do so both because a sufficiency claim comports with his requested relief (*i.e.,* vacating judgment) and because his relied-upon authorities analyze sufficiency (rather than weight) arguments.

2

*Id.* at 478. Similarly, in *Schuloff*, the defendant was tried and convicted of "the crime of possession of marijuana and hashish[.]" 275 A.2d at 836. In finding the evidence insufficient to sustain the conviction, the Superior Court founds as follows:

> The evidence presented by the Commonwealth was entirely circumstantial. The drugs were found on the early morning of January 18, 1969, by the Pennsylvania State Police in a couch situated in the living room of a second floor apartment in Lancaster. The apartment was rented by appellant and Bernard G. Beck, Jr., who was also indicated for possession of narcotics. Entry by the police was obtained as a result of a search warrant...At the time of execution of the search warrant, the police found four persons, including appellant and Beck, asleep in the apartment, but none of them were found in the living room where the narcotics were discovered in the search...It is our conclusion that the Commonwealth has presented insufficient evidence to sustain appellant's conviction.

*Id.*

Whether a jury determination is supported by sufficient evidence is a question a trial court answers by reference to the same standard of review as would be exercised by an appellate court deciding the same question. *Higgenbotham v. Keene Corp.*, 23 Phila. Co. Rptr 589, 591 (Phila. Cty Ct. Com. Pl. 1991) (citing *Rocker v. Harvey Co.*, 535 A.2d 1136 (Pa. Super. 1988)). The appellate standard of review for sufficiency of the evidence, in turn, is well settled:

> The standard we apply when reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced is free to believe all, part or none of the evidence. Furthermore, when reviewing a sufficiency claim, our Court is required to give the prosecution the benefit of all reasonable inferences to be drawn from the evidence...However, the inferences must flow from facts and circumstances proven in the record, and must be of such volume and

3

quality as to overcome the presumption of innocence and satisfy the jury of an accused's guilt beyond a reasonable doubt. The trier of fact cannot base a conviction on conjecture and speculation and a verdict which is premised on suspicion will fail even under the limited scrutiny of appellate review.

*Commonwealth v. Gibbs,* 981 A.2d 274, 280-81 (Pa. Super. 2009) (citations omitted). This standard "is equally applicable where the evidence is circumstantial rather than direct so long as the combination of the evidence links the accused to the crime beyond a reasonable doubt." *Commonwealth v. Antidormi,* 84 A.3d 736 (Pa. Super. 2014) (citing *Commonwealth v. Sanders,* 627 A.2d 183, 185 (Pa. Super. 1993)). It is well-settled that "[p]ossession may be proven by circumstantial evidence." *In re R.N.,* 951 A.2d 363, 370 (Pa. Super. 2008).

Specifically with regard to illegal possession of firearms, "the Commonwealth must establish that an individual either had actual physical possession of the weapon or had the power of control over the weapon with the intent to exercise that control." *Id.* at 369-370. 18 Pa. C.S.A. § 6105(a)(1) provides that a person convicted of an enumerated offense "shall not possess, use, control, sell, transfer or manufacture or obtain a license to possess, use, control, sell, transfer or manufacture a firearm in this Commonwealth."

Here, as in *Florida* and *Schuloff,* the Commonwealth did not directly adduce evidence that Craig physically held contraband in his hands. Nevertheless, we find Craig's relied-upon authorities to be readily distinguishable. In both *Florida* and *Schuloff,* the Commonwealth attempted to sustain its burden by merely demonstrating a nexus of a particular place, illicit drugs, and the defendants' presence. *See* 275 A.2d at 836; 272 A.2d at 477-478. Here, however, the Commonwealth produced significantly greater evidence of Craig's possession or control of the firearms, and his intent to either possess or control those firearms. For instance, the Commonwealth entered into evidence video footage of Craig's ushering another person into his driveway, and thereafter directing this person inside of his home while this other person carried

4

the shotgun in question. The individual thereafter is seen leaving Craig's residence without the shotgun. Evidence was also entered tending to establish that the only other occupant of Craig's residence – his wife – was largely unfamiliar with the operation of firearms. Additionally, while executing the search warrant on Craig's residence which resulted in the discovery of the firearms, the Oil City Police discovered the text of the Uniform Firearms Act's prohibition displayed on Craig's computer monitor. During summation, the Attorney for the Commonwealth argued that Craig's apparent legal research served as evidence of consciousness of guilt, and therefore intent. The inference the Commonwealth suggested that the jury should draw in this regard is, considering all of the evidence entered at trial, a reasonable one. Given the verdict, it is clear that the jury accepted this theory of the case, and accordingly we may not reverse their factual determinations. *Gibbs,* 981 A.2d at 280-81.

We note that Craig's attempt at trial to argue that he did not possess the firearms in question was belied by his simultaneous assertion of a duress defense. Affirmative defenses (including duress) involve the defendant admitting to the commission of the crime, but arguing for the existence of circumstances which justify or excuse its commission. *Commonwealth v. Winebrenner,* 265 A.2d 108, 114 (Pa. 1970). While there is no *per se* rule that a defendant's assertion of an affirmative defense waives any sufficiency argument, we note Pennsylvania Courts have long recognized counsel's effectiveness for not presenting inconsistent arguments to a jury. *See, e.g., Commonwealth v. Smith,* 17 A.3d 873, 901 (Pa. 2011) (counsel cannot be held ineffective for failing to present an inconsistent defense). The Court is ill-equipped to hold that the Commonwealth failed to adduce sufficient evidence of Craig's possession of a firearm, in no small part because Craig's affirmative defense hinged (at least partially) on conceding that very

5

argument.[2] Accordingly, Craig's arguments as they relate to the sufficiency of the evidence are without merit, and Craig's Motion in this respect is denied.

*Prejudicial Trial Errors*

Craig next asserts that several instances of alleged prejudice entitle him to a new trial. Specifically, Craig objects to the District Attorney's eliciting testimony from Robert Neubauer relating to an altercation that occurred on May 30, 2016, between Craig and a group of persons which included Neubaur as well as Sean Schillinger. Mot. ¶¶ 6-12. As a result of this altercation, the exact circumstances of which are disputed, Craig stabbed Schillinger. Craig asserts that the discussion of the incident was "irrelevant to the charges of person prohibited to possess a firearm and were clearly intended to incite fear and prejudice in the jury." Mot. ¶7. Additionally, Craig takes exception to remarks made by the District Attorney during closing argument, and asserts that the "prosecutor intentionally injected prejudicial remarks into the case, comments that the courts have decided were barred to prosecutors." Mot. ¶¶ 13-16.

With respect to the evidence surrounding the May 30, 2016 incident, we note that evidence relating to the altercation initially came into evidence during Craig's presentation of his own defense, and not during the Commonwealth's case in chief. A "litigant opens the door to inadmissible evidence by presenting proof that creates a false impression refuted by the otherwise prohibited evidence." *Commonwealth v. Nypaver,* 69 A.3d 708, 716 (Pa. Super. 2013). Here, Craig initially sought to introduce evidence of the May 30, 2016 incident in order to demonstrate that he obtained one of the weapons while under duress, *i.e.,* that person of reasonable firmness in Craig's position would not have been able to resist the pressure of

---

[2] We would note that Craig abandoned his duress defense somewhat at the close of trial, in that he declined to specifically invoke the concept during summation.

6

obtaining a firearm.[3] Craig having entered evidence as to the circumstances of the altercation, he opened the door to the Commonwealth's entering evidence which tended to rebut Craig's version of events. There was clear evidentiary support for the version of events as argued by the Commonwealth (*i.e.,* that Schillinger was unarmed and was not the aggressor), even if Craig disagrees with the particular factual circumstances testified to by Neubauer. Even were we to construe the District Attorney's characterization of the incident as Craig having "stabbed an unarmed man" as improper, his remarks were not so clearly prejudicial as to warrant a new trial under the framework outlined by the Superior Court in *Commonwealth v. Frazier*:

> Not every improper or intemperate remark by the prosecutor mandates a new trial; rather, a new trial is necessary only if the unavoidable effect of the comments would be to prejudice the jury, forming in their minds fixed bias and hostility towards the defendant, so that they could not weigh the evidence and render a true verdict.

480 A.2d 276, 280 (Pa. Super. 1984) (internal citations and quotations omitted). Prosecutors are afforded "a degree of latitude in the exercise of advocacy in [their] position." *Id.* at 279. A prosecutor does not exceed the range of permissible remarks where his arguments and remarks fairly respond to those made by defense counsel. *Id.* Here, the District Attorney's statement that Craig "stabbed an unarmed man" was an accurate reflection of Robert Nuebauer's testimony. This is perfectly permissible. *See id.* (a prosecutor's accurately recalling witness testimony and inviting jurors to draw reasonable inferences therefrom does not constitute prosecutorial misconduct).

---

[3] Pursuant to 18 Pa. C.S.A. § 309(a), a defendant may assert the defense of duress where "the actor engaged in the conduct charged to constitute an offense because he was coerced to do so by the use of, or a threat to use, unlawful force against his person or the person of another, which a person of reasonable firmness in his situation would have been unable to resist." The Court previously discussed Craig's entitlement to a duress instruction in our pre-trial Opinion of February 16, 2017.

7

To the extent that Craig takes issue with Robert Neubauer's answers to questions (and not the District Attorney's elicitation of answers or other remarks), we simply note that many of the complained-of answers (*e.g.,* the fact that Schillinger later died, *see* Mot. ¶11) were elicited by Craig's own questioning. All contemporaneous objections made by Craig to the District Attorney's questioning of Nuebauer were limited to taking issue with the form of the questions, rather than the supposed prejudicial value of the evidence solicited by those questions. Accordingly, Craig has failed to preserve these evidentiary objections and no relief is merited.

Finally, Craig asserts that remarks by the District Attorney during closing argument "served to prejudice the defendant." Mot. ¶13. Craig indicates that the complained-of remarks are "similar to the statement made by the prosecutor in [*Commonwealth v. Bolden,* 323 A.2d 797 (Pa. Super. 1974)]," wherein the prosecutor stated during summation that "there are certain things that I cannot tell you referring to this case." Mot. ¶14; *Bolden,* 323 A.2d at 798. Craig accurately cites *Bolden* for the proposition that such remarks are improper and, if made, warrant a new trial. *Id.* at 798-799. Having reviewed the Commonwealth's closing argument, however, we can discern nothing in the District Attorney's remarks that was improper in this regard.[4]

For the foregoing reasons, Craig is entitled neither to a new trial nor to the Court vacating his convictions. An appropriate Order shall follow.

BY THE COURT,

_____
Oliver J. Lobaugh, President Judge

cc:  DA (D.S. White, Esq.)
     Ruben Craig

---

[4] We note that Craig himself noted "constraints" as to what he was allowed to say during his summation.

8

IN THE COURT OF COMMON PLEAS OF VENANGO COUNTY, PENNSYLVANIA

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | CRIMINAL DIVISION |
| | : | |
| v. | : | CR No. 480-2106 |
| | : | |
| RUBEN RICHARD CRAIG, | : | |
| *Defendant/Appellant.* | : | |

**OPINION OF COURT PURSUANT TO Pa.R.A.P. 1925(a)**

AND NOW, January 24, 2018, the Court has for consideration the Defendant/Appellant Ruben Richard Craig's Concise Statement of Matters Complained of on Appeal, filed on November 3, 2017 in the above-captioned matter. For the reasons articulated below, we respectfully request that your Honorable Court dismiss Craig's appeal and affirm his convictions and judgment of sentence in this matter.

The Criminal Information prepared in this matter alleges that Craig committed two counts of Persons Not to Possess Firearms, in violation of 18 Pa. C.S.A. § 6105(a)(1), each a Felony of the second degree. Specifically, with regard to Count 1, Craig was charged with having previously been convicted of Aggravated Assault and thereafter possessing a 12-guage Mossberg New Haven shotgun. With regard to Count 2, Craig was charged with having previously been convicted of Aggravated Assault and thereafter possessing a .380 pistol. Following a jury trial at which he represented himself, Craig was found guilty of both charges on February 21, 2017. On April 28, 2017, the Court imposed identical and concurrent sentences on both counts of fifty-four (54) to one hundred twenty (120) months' incarceration. Craig subsequently filed a timely Post-Sentence Motion wherein he alleged that the Commonwealth failed to prove all elements of the alleged offenses and that he was prejudiced by various trial errors. For these reasons, Craig requested that the Court vacate judgment in the above-captioned matter and grant him a new trial. After due

1

consideration, the Court denied Craig's Post-Sentence Motion, finding said Motion devoid of merit.

Forty-nine days after the Court entered our Opinion and Order of Court denying his Post-Sentence Motion, Craig filed a Notice of Appeal in the above-captioned matter. Having received said Notice, the Court ordered that Craig file the instant Concise Statement of Matters Complained of on Appeal. Thereafter, Craig timely filed said Statement wherein he raises thirteen issues.[1] We recite these issues verbatim below:

1. Mere proximity to weapon is insufficient to establish constructive possession.
2. Testimony pertaining to Memorial Day 2016 incident and death of Schillinger was improperly permitted despite extremely prejudicial nature of this testimony and lack of relevance/probative value.
3. Defendant improperly denied opportunity to argue defense of necessity.
4. Denial of requested witnesses, despite proffer, denied defendant ability to mount defense.
5. Evidence obtained during search, not articulated in search warrant, was inappropriately permitted at trial.
6. Police statements relating to defendant's intent were so prejudicial that it denied presumption of innocense [sic].
7. Prosecutor's reference, during closing arguments, to facts not established in evidence denied defendant presumption of innocense [sic].
8. Prosecutor's non-financial vested interests in case should have disqualified his (and his wife's) involvement.
9. Delays during proceedings violated established protocols.
10. *Brady* violations occurred with regards to certain witnesses.
11. Referring to shotgun as "tactical" and "modified" was irrelevant, inaccurate [,] and unduly prejudicial.
12. Ruling not to return property was inappropriate.
13. Prosecution violated defendant's inalienable right to bear arms.

*See generally* Def.'s Concise Statement of Matters Complained of on Appeal.

---

[1] Inmate filings are treated as filed upon the date they are placed into the prison's mailbox. *Commonwealth v. Jones*, 549 Pa. 58, 700 A.2d 423, 425 (1997). Craig, who is currently incarcerated in a state correctional facility, mailed his Concise Statement of Matters Complained of on Appeal with other filings related to his criminal case captioned as CR No. 597-2016 from his place of incarceration to the Venango County Clerk of Courts on November 3, 2017. Accordingly, Craig's Concise Statement of Matters Complained of on Appeal is treated as filed on November 3, 2017 and not on November 13, 2017, the date the Court received and time-stamped the filing.

Following our receipt of Craig's Concise Statement of Matters Complained of on Appeal, we received an Order from the Pennsylvania Superior Court directing Craig to show cause as to why the appellate court should not quash the instant appeal as untimely. After reviewing the record and discovering that Craig may not have received actual notice of our Opinion and Order of Court denying Craig's Post-Sentence Motion, we wrote a letter to the Superior Court explaining that Craig may not have received actual notice of our Opinion and Order of Court from which he now appeals. On January 4, 2018, the Superior Court entered an Order discharging its rule to show cause Order. Thus, we address each issue Craig raises on appeal *seriatim*.

However, as a preliminary matter, we note that addressing some of the matters complained of on appeal would call upon this Court to improperly guess or anticipate as to what specific error Craig complains of on appeal. *Commonwealth v. Pettus*, 2004 Pa. Super. 379, 860 A.2d 162, 164 (2004) ("The trial court may not frame the issues for an appellant, either by guessing or anticipating ... the appellate courts have emphasized that a trial court's unsolicited discussion of issues not raised by an appellant in his 1925(b) statement by guessing, anticipating, or predicting the issues would not save the issues from being waived.") (internal citations omitted). Accordingly, this Court is precluded from opining on the merits as to some of matters Craig raises on appeal.

### Sufficiency and Impermissible Testimony

The first two issues Craig complains of on appeal mirror issues Craig raised in his Post-Sentence Motion. Specifically, with respect to the first issue Craig complains of in his Concise Statement, Craig argues, in essence, that the Commonwealth presented insufficient evidence to convict him of Persons Not to Possess Firearms, in violation of 18 Pa. C.S.A. § 6105(a)(1), because mere proximity to the 12-guage Mossberg New Haven shotgun and .380 pistol is insufficient to establish constructive possession. *See* Def.'s Concise Statement of Matters Complained of on

3

Appeal ¶ 1. This is the same issue Craig advanced in his Post-Sentence Motion, wherein he claimed that "mere proximity is not enough to establish constructive possession, absent evidence of intent to possess." Def.'s Post-Sentence Mot. ¶ 5. Similarly, in the second issue Craig complains of in his Concise Statement, it appears that he attempts to make a Pa. R. Evid. 403 argument by contending that allowing the jury to hear testimony pertaining to the Memorial Day 2016 incident was improper because its probative value was outweighed by the danger of unfair prejudice. *See* Def.'s Concise Statement of Matters Complained of on Appeal ¶ 2. In his Post-Sentence Motion, Craig advanced the same argument in that he contended that discussion of the 2016 incident was "irrelevant to the charges of person prohibited to possess a firearm and were clearly intended to incite fear and prejudice in the jury." Def.'s Post-Sentence Mot. ¶ 7.

We discussed at length the reasons for finding these two claims meritless in our Opinion dated August 29, 2017, which explains our rationale for denying Craig's Post-Sentence Motion. *See* Opinion of Court, *Commonwealth v. Craig*, CR No. 480-2016, at 2-8 (Aug. 29, 2017). Pursuant to Pa. R.A.P. 1925(a)(1), "if the reasons for the order do not already appear of record, [the Court] shall forthwith file of record at least a brief opinion of the reasons for the order, or for the rulings or other errors complained of, or shall specify in writing the place in the record where such reasons may be found." Because we have already explained our reasons for finding these two issues meritless on the record, we accordingly direct the parties', as well as your Honorable Court's, attention thereto for a full explanation of our disposition as to these particular issues.

### Defense of Justification by Necessity

Next, Craig argues that the Court improperly denied him the opportunity to advance "the defense of necessity" at trial. Concise Statement of Matters Complained of on Appeal ¶ 3. With respect to this contention, we believe that Craig is referring to our Opinion and Order of Court

4

dated February 15, 2017, wherein we granted Commonwealth's Motion *in Limine* prohibiting Craig from introducing evidence tending to establish the affirmative defense of duress, not justification by necessity. *See generally* Opinion and Order of Court, *Commonwealth v. Craig*, CR No. 480-2016 (Feb. 15, 2017). We find Craig's instant argument to be meritless for two reasons: (1) Craig never tried to advance a defense of justification by necessity at any point leading up to or during trial and (2) Craig never met the legal standard warranting a jury instruction on the defense of justification by necessity.

In footnote 1 of our February 15, 2017 Opinion and Order, we noted the following with repect to the affirmative defense of justification by necessity:

> The Commonwealth's Motion[,] on its face[,] requests the Defendant be precluded from introducing evidence related to the defense of justification by necessity. *See* 18 Pa. C.S.A. §§ 501 – 506. **However, at the time of the hearing[,] Counsel for the Defendant indicated that they did not intend to seek an instruction on justification, but did intend to seek an instruction on duress. Accordingly, we will not issue an instruction on justification, both because we do not understand the Defendant as desiring one and because we do not believe one would be warranted even [if it was] requested.** *See Commonwealth v. Billings*, 793 A.2d 914, 916 (Pa. Super. 2002) (justification instruction not warranted where no "clear and imminent" danger necessitated defendant's inebriated operation of vehicle); *Commonwealth v. Moore,* 103 A.3d 1240, 1243 (Pa. 2014) (a conviction for Possession of an Instrument of a Crime, 18 Pa. C.S.A. § 907(a), may stand even where a defendant successfully asserts self-defense and is acquitted for homicides charged as part of the same criminal episode).

Opinion and Order of Court, *Commonwealth v. Craig*, CR No. 480-2016, at n.1 (Feb. 15, 2017) (emphasis added); *see also* Mot. *in Limine* Tr. at 9-14.[2] Based on argument elicited from Craig's counsel *before* trial, it was clear to the Court that Craig never intended to assert a justification by necessity defense *at* trial. Moreover, even after the Court allowed Craig to represent himself, he

---

[2] At the time that the Court heard argument on the Commonwealth's Motion *in Limine*, Craig was represented by Venango County Public Defenders Jeri Bolton, Esquire and Allison Hartle, Esquire. Thereafter, Craig requested to represent himself, which the Court allowed after conducting a colloquy on the matter. *See generally* Mot. to Reconsider Mot. *in Limine*/Colloquy Regarding Counsel Tr.

stated on the record that certain witnesses were necessary to establish "justification and duress," but he never admitted any evidence to advance a justification by necessity defense nor did he ever request an instruction on such a defense. *See e.g,* Trial Tr., 2/17/17, at 213; *see generally* Trial Tr., 2/21/17. In fact, after charging the jury, the Court inquired as to whether Craig was satisfied with the charge and the following exchange ensued:

> THE COURT: Is there anything omitted, distorted, overlooked that should be corrected at this point prior to their deliberations, Mr. Craig?
>
> MR. CRAIG: I'm satisfied, Your Honor.

Trial Tr., 2/21/17, at 185.

Because Craig never requested that the Court give a jury instruction on the defense of justification by necessity nor de he object to the instruction's omission, we could not have erred in failing to give Craig "an opportunity to argue" such a defense. *See Commonwealth v. Williams,* 458 Pa. 319, 322, 326 A.2d 300, 302 (1974) ("We have consistently held that no allegation of error will be considered by [appellate courts] unless it was properly raised by specific objection at the time of trial....The absence of a timely exception or objection is therefore conclusive as a bar to appellant's allegation of error.")

To the contrary, we find that had we given such an instruction to the jury, judicial error would have resulted because Craig never made an offer of proof demonstrating that he had sufficient evidence to prove all four elements necessary to establish the defense of justification by necessity. To be entitled to a justification by necessity defense jury instruction, Craig must have offered evidence to show:

> (1) that (he) was faced with a clear and imminent harm, not one which is debatable or speculative;
> (2) that (he) could reasonably expect that (his) actions would be effective in avoiding this greater harm;

6

(3) that there is no legal alternative which will be effective in abating the harm; and

(4) that the Legislature has not acted to preclude the defense by a clear and deliberate choice regarding the values at issue.

*Billings*, 793 A.2d at 916 (alteration in original); *see also* 18 Pa. C.S.A. § 503. With respect to offers of proof as to the aforementioned elements,

> it is essential that the offer meet a minimum standard as to each element of the defense so that if a jury finds it to be true, it would support the affirmative defense- here that of necessity. This threshold requirement is fashioned to conserve the resources required in conducting jury trials by limiting evidence in a trial to that directed at the elements of the crime or at affirmative defenses raised by the defendant. Where the proffered evidence supporting one element of the defense is insufficient to sustain the defense, even if believed, the trial court has the right to deny use of the defense and not burden the jury with testimony supporting other elements of the defense.

*Id.* (citing *Commonwealth v. Capitolo*, 508 Pa. 372, 377, 498 A.2d 806, 809 (1985)).

In the instant case, Craig never admitted or offered any evidence at trial tending to establish by a preponderance of the evidence that the reason the firearms were in his residence was because he was in clear and imminent danger of being harmed. At trial, Craig primarily elicited testimony from Jacob Wimer, his wife Jenny Craig, and himself. *See generally* Trial Tr., 2/21/17. Jacob Wimer merely testified to the fact that he gave Craig and his wife the 12-guage Mossberg New Haven shotgun because he was concerned for his sister's, Jenny Craig's, safety. Trial Tr., 2/21/17, at 10-16. Jenny Craig then testified to the fact that she purchased the .380 pistol on January 16, 2016, four months before the events of Memorial Day 2016 transpired, because there had been a drive-by shooting in the neighborhood. Trial Tr., 2/21/17, at 83-84, 86. This is important because it shows that the .380 pistol was in Craig's residence well before the events that spurred Craig's apparent need to have firearms in his household. Jenny Craig further testified that she kept the .380 pistol under the bed on which both she and Craig slept. *Id.* at 85. Finally, Craig himself testified, wherein he stated that he knew his wife's .380 pistol had been in his home for months leading up

7

to Memorial Day 2016, and that, even on Memorial Day 2016, he did not touch the firearm because he did not want to commit the felonies for which he was charged in this matter:

> [t]he night of Memorial Day, I mean, it was so severe that if I ever was to use a gun I would've had a gun that night, but even that night I didn't. I'm legally allowed a knife, that's what I had and while I waited for the police that's what I went to. So even in the most dire of circumstances that night I didn't do it so it's hard to say when I might.

*Id.* at 131; *see also id.* at 122 (Ruben Craig stating that his wife had a pistol in the home before Memorial Day 2016). From this evidence, it is not apparent that the reason Craig had two firearms in his residence was to protect himself from clear and imminent harm. Rather, this evidence tends to establish just the opposite. His statement that he did not even use a firearm to protect himself on Memorial Day 2016, the day he felt he was in the most danger, coupled with his wife's statement that she purchased the .380 pistol four months prior to the Memorial Day 2016 incident, shows that the firearms were in the Craig residence for a purpose other than to protect himself from clear and imminent harm.

Similarly, Craig did not present any evidence at trial tending to show that possession of two firearms would have been effective in avoiding a greater harm. Craig testified at trial that he regularly carried a knife on his person for self-defense purposes. *Id.* Further, Jenny Craig testified that she heard a Robert Nubauer say that he was going "to spray the house with an AK." *Id.* at 92. Seeing as Defendant Ruben Craig already legally possessed a weapon that he carried for self-defense purposes and that the two firearms found in Craig's residence, a pistol and a shotgun, were no match for an AK-47, an automatic assault weapon, the Court finds that there is no evidence to support that Craig reasonably believed that the firearms found in his residence would be effective in avoiding a greater harm.

8

Craig also did not present any evidence tending to show that there were no legal alternatives which would be effective in abating the "harm" posed to him. First, as stated above, Craig regularly carried a knife on his person to protect himself. As he aptly stated during trial, he was legally entitled to carry a knife; he was not, however, allowed to possess firearms due to his previous Aggravated Assault conviction. Trial Tr., 2/21/17, at 130. Second, any evidence that Craig could have presented as to this element is belied by the fact that Chief Wenner of the Oil City Police Department testified that Craig visited the police department to report the Memorial Day 2016 incident as an assault on himself. Trial Tr., 2/17/17, at 83, 89. This testimony tends to show that Craig had a legal alternative to abate the alleged harm posed to him because it establishes that Craig knew he could rely on police assistance to try to avoid any further alleged threat of harm.

Moreover, by promulgating a statute that prohibits certain felons from possessing firearms under all circumstances, it is clear that the Legislature has acted to preclude use of this defense for prior felons at least in the way Craig asserts it should apply. From his Concise Statement, we understand Craig as advancing the argument that he should have been afforded the opportunity to assert a justification by necessity defense operating under the theory that he had to possess the firearms found in his residence to avoid a clear and imminent threat of harm. Concise Statement of Matters Complained of on Appeal ¶ 3. In drafting 18 Pa. C.S.A. § 6105(a), the Legislature specifically outlawed those who have been previously convicted of certain felonies from possessing, using, controlling, selling, transferring, or manufacturing a firearm within the Commonwealth. 18 Pa. C.S.A. § 6105(a). If a felon violates 18 Pa. C.S.A. § 6105(a), the statute goes on to list the penalties that may be imposed on violators. 18 Pa. C.S.A. § 6105(b). Given that 18 Pa. C.S.A. § 6105 allows the Court to impose specific penalties on felons who possess firearms and Craig is among those felons precluded from possessing, using, controlling, selling,

transferring, or manufacturing a firearm within the Commonwealth pursuant to 18 Pa. C.S.A. § 6105(a), it would exceed all bounds of logic and reason for the Court to conclude that the Legislature was not aiming to preclude the defense of justification by necessity in the way Craig is alleging it should apply in this case.

For the foregoing reasons, we find Craig's appeal as to this specific issue meritless and respectfully request that your Honorable Court find the same in ruling on Craig's appeal.

*Denial of Requested Witnesses*

The fourth matter Craig complains of on appeal is that the Court denied him the ability "to mount defense" because the Court did not allow him to present certain witnesses to the jury after he gave an offer of proof as to what the witnesses would testify to at trial. Concise Statement of Matters Complained of on Appeal ¶ 4. Specifically, Craig appeals our decision to not allow him to call an Ona Knight and Christopher Barsh as witnesses in his case-in-chief because we found that their testimony would be irrelevant and collateral to the matter at hand. Trial Tr., 2/17/17, at 223. We came to this determination after the Commonwealth requested an offer of proof as to what these witnesses would testify to and Craig only offered vague responses. *See id.* at 191-93, 213-14. Because Craig could not tell the Court in sufficient detail what Ona Knight and Christopher Barsh would testify to, we excused the jury and conducted a Motion *in Limine* type proceeding, wherein we heard testimony from both Ona Knight and Christopher Barsh. *Id.* at 206-22. Ona Knight, the aunt of Craig's wife, stated that she could only testify that she saw someone tampering with the mail at the Craig residence on June 24, 2016, which was weeks after police confiscated the at-issue firearms from the residence, that Craig's wife stayed with her on the night of the Memorial Day 2016, and that she could provide hearsay testimony of the specific "threats" Craig's wife received. *Id.* at 206-11. Christopher Barsh stated that he could testify to the manner in which

10

Craig's wife's family treated him when he dated Craig's wife and that he was scared of Ruth Biernesser, Craig's wife's mother. *Id.* at 216-22.

According to the Pennsylvania Rules of Evidence, "[e]vidence that is not relevant is not admissible." Pa. R. Evid. 402. "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Pa. R. Evid. 401. Moreover, "[t]he court may exclude relevant evidence if its probative value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Pa. R. Evid. 403.

Based on the testimony the Court heard from Ona Knight after excusing the jury, we found, and continue to find, that Craig did not show that her testimony would make the reason he possessed the firearms – that he was under duress due to threats that arose on or about Memorial Day 2016 – or the Commonwealth's theory of the case more or less probable. At the very most, Ona Knight's testimony could only establish that Craig's wife was scared as a result of the events that transpired between the Defendant Craig and three other men on Memorial Day 2016 and that Craig's wife told her stories about harassing behavior Craig's wife experienced. This testimony does not go to Craig's state of mind or his intent for having the firearms at the residence. Thus, her testimony is irrelevant to both advancing Craig's case-in-chief and rebutting the Commonwealth's case-in-chief.

Even if the Court were to find that Ona Knight's testimony is relevant to the case at hand, its probative value does not outweigh the danger of confusing the issues, misleading the jury, causing undue delay, or needlessly presenting cumulative evidence pursuant to Pa. R. Evid. 403. Ona Knight was not an eyewitness to the events that transpired on Memorial Day 2016 and did not

11

give Craig any of the firearms found to be in Craig's possession. Rather, the jury would be best served by hearing the information Ona Knight could testify to from Craig himself or his wife, both of whom have first-hand knowledge of the "threats" received by Craig and his wife and both of whom did testify at trial.

Similarly, after hearing from Christopher Barsh as to what he can testify to, we found, and continue to find, that the information he could provide the jury were not facts of consequence and would not make Craig's theory of the case or the Commonwealth's theory of the case more or less probable. Christopher Barsh could not offer any first-hand knowledge as to the "threats" Craig received. He could merely testify to the fact that, years prior to the charges being filed in this matter, Barsh was allegedly falsely accused of sexually harassing someone in Craig's wife's family by Ruth Biernesser. This information has absolutely nothing to do with why Craig felt the need to have firearms in his residence nor does it have anything to do with rebutting the Commonwealth's case-in-chief. Thus, Christopher Barsh's testimony is, and was, wholly irrelevant to this matter.

Because we found, and continue to find, that Ona Knight's and Christopher Barsh's testimony is not relevant evidence pursuant to Pa. R. Evid. 401, we neither erred as a matter of law nor abused our discretion in declining to allow Craig to call Ona Knight and Christopher Barsh as witnesses at trial in the above-captioned matter. We respectfully request that your Honorable Court find the same and dismiss this issue on appeal.

*Admission of Evidence not Articulated in Search Warrant*

Next, Craig contends that evidence obtained during the search of his residence was improperly admitted at trial because the evidence was "not articulated in the search warrant." Def.'s Concise Statement of Matters Complained of on Appeal ¶ 5. From the wording of Craig's perceived issue, we understand Craig to be challenging the admission of physical evidence marked

12

for identification purposes as Commonwealth's Exhibits 3, 4, 5, and 6. Commonwealth's Exhibit 3 is the Hi-Point box, which contained the .380 pistol, ammunition, and a firearm magazine found by Oil City police upon executing the aforementioned search warrant. Com's Ex. 3; Trial Tr., 2/17/17, at 78-82. Commonwealth's Exhibit 4 is a photograph taken of a bedroom in Defendant's residence on the date that the Oil City police executed its search warrant of Defendant's home. *See* Com.'s Ex. 4; Trial Tr., 2/17/17, at 118-19. In said photograph, a 12-gauge Mossberg New Haven shotgun is displayed and is propped up against the wall of the bedroom and what appears to be a closet. Com.'s Ex. 4; Trial Tr., 2/17/17, at 118-19. The photograph also displays what appears to be a box of ammunition on the bedroom floor. Com.'s Ex. 4. Commonwealth's Exhibit 5 is a photograph of an activated computer screen that Oil City police observed in Defendant's living room while searching for the items listed in the search warrant. Com.'s Ex. 5; Trial Tr., 2/17/17, at 120-21. On the computer screen, the police observed the text of the Pennsylvania Uniform Firearms Act. Com.'s Ex. 5; Trial Tr., 2/17/17, at 120-21. Commonwealth's Exhibit 6 is the DVD containing video footage of Craig ushering a man carrying what appears to be a shotgun into Craig's apartment and thereafter leaving Craig's apartment empty handed. Com.'s Ex. 6; Trial Tr., 2/17/17, at 122. After laying sufficient foundation for each of these exhibits, the Commonwealth moved for each one's admission. Trial Tr., 2/17/17, at 78-82, 118-22. Before admitting Commonwealth's Exhibits 3, 4, 5, and 6, the Court asked Craig if he had any objections. *Id.* Each time the Court posed this question, Craig responded by stating that he had no objection. *Id.* Thus, finding no objection to admitting Commonwealth's Exhibits 3, 4, 5, and 6 into evidence, the Court granted the Commonwealth's motions to admit the exhibits and the trial proceeded. *Id.*

It is well established that failure to timely object to the admission of a piece of evidence at trial constitutes a waiver of the ability to take issue with the evidence's admission on appeal. *See*

13

*Williams*, 326 A.2d at 302 ("We have consistently held that no allegation of error will be considered by [appellate courts] unless it was properly raised by specific objection at the time of trial....The absence of a timely exception or objection is therefore conclusive as a bar to appellant's allegation of error.").

Because Craig failed to object to the admission of Commonwealth's Exhibits 3, 4, 5, and 6 at trial, he cannot now object to their admission for the first time on appeal. For this reason, Craig's contention that the Court improperly admitted evidence not articulated in the search warrant is meritless.

Additionally, even if Craig had objected to the admission of the aforementioned exhibits into evidence, much of the same evidence was admitted into evidence through Defendant's Exhibits A, B, C, and D. *See* Trial Tr., 2/17/17, at 115. Defendant's Exhibit A is a photograph of Craig's bedroom, which shows the location of the shotgun when police found the firearm in his residence as well a box of ammunition on the bedroom floor. *Id.* at 102. Defendant's Exhibit B is a photograph of a Wal-Mart receipt for ammunition found by Oil City police on a stand in Craig's living room on the day the search warrant was executed. *Id.* at 105-06. Defendant's Exhibits C and D are photographs of Craig's state-issued identification card found next to the Wal-Mart receipt for ammunition. *Id.* at 106. Because Craig himself admitted much of the evidence that he now claims was improperly admitted into evidence by the Court – items not articulated in the search warrant, but in plain view during the police officers' search of his residence –, he has no leeway to challenge the propriety of admitting the Commonwealth's exhibits on appeal.

Finally, even if Craig had objected to the admission of the aforementioned exhibits into evidence and did not admit the same evidence at trial himself, the evidence contained in the

14

Commonwealth's exhibits, with the exception of Commonwealth's Exhibit 6,[3] falls squarely within the plain view exception to the search warrant requirement. Both the Fourth Amendment of the United States Constitution and Article 1, § 8 of the Pennsylvania Constitution protect individuals from unreasonable searches and seizures. *See* U.S. Const. amend. IV; Pa. Const. Art.1, § 8. Accordingly, "[a] warrantless search or seizure is presumptively unreasonable under the Fourth Amendment and Article 1, § 8, subject to a few specifically established, well-delineated exceptions." *Commonwealth v. McCree*, 592 Pa. 238, 247, 924 A.2d 621, 627 (2007). Evidence seized in accordance with the plain view doctrine is one of the specifically established, well-delineated exceptions to the warrant requirement. *Id.* A warrantless search and seizure falls within the plain view exception to the warrant requirement when police officers, from a lawful vantage point, seize items where the incriminating nature of the item is immediately apparent to the officer. *Id.* at 625.

In the present case, Oil City police officers executed a valid search warrant at Craig's residence for the purpose of searching for and seizing "[f]irearms to include, but not limited to a shot gun [sic] and handguns." *See* Search Warrant; OPTM/Suppression Hr'g Tr., 10/28/16, at 43. During the course of the search for firearms, Oil City Police Officer Cory Ruditis entered the doorway of what appeared to be Craig's bedroom and immediately saw a box labelled "Hi-Point" underneath the bed, which contained a .380 pistol, boxes of ammunition, and a firearm magazine. Trial Tr., 2/17/17, at 119, 123. Officer Ruditis was immediately aware that the box contained the type of contraband listed in the search warrant as he knew that "Hi-Point" is a brand of firearm. *Id.* at 128. After lifting the lid of the box, Officer Ruditis testified that he immediately identified

---

[3] From Oil City Police Chief Robert Wenner's testimony at trial, the video footage contained in Commonwealth's Exhibit 6 was voluntarily given to police by the owner of the cameras. *See* Trial Tr., 2/17/17, at 65-67. Thus, it was not evidence discovered by Oil City police when Oil City police executed the search warrant of Craig's residence.

15

the box's contents as a .380 pistol, firearm ammunition, and a firearm magazine. *Id.* Because Officer Ruditis was searching Craig's residence pursuant to a valid search warrant and the "Hi-Point" box is the type of place the items articulated in the warrant are typically stored, he found the evidence described *supra* from a lawful vantage point. Moreover, as his testimony proved, Officer Ruditis immediately perceived the firearm ammunition and firearm magazine found in the "Hi-Point" box as incriminating.[4] Thus, Officer Ruditis lawfully discovered and seized the "Hi-Point" box and its contents pursuant to the plain view exception to the search warrant requirement.

In addition to finding the contents of the "Hi-Point" box, police officers also found a box of ammunition lying on the bedroom floor as displayed in Commonwealth's Exhibit 4 as well as an activated computer screen displaying the Pennsylvania Uniform Firearms Act upon entering Craig's apartment to execute the search warrant.[5] *Id.* at 123-24; *see also* Com.'s Ex. 4; Com.'s Ex. 5. Because the police officers had legal authority to enter Craig's residence pursuant to the valid search warrant, they found these incriminating items from a lawful vantage point. Moreover, because the computer screen was already activated and the ammunition box was lying on the floor and not concealed in anyway, the police officers executing the search warrant were able to immediately identify these items as incriminating upon walking into Craig's living room and bedroom respectively. *Id.* Thus, the picture of the activated computer screen and the ammunition box were lawfully seized pursuant to the plain view exception to the search warrant requirement.

Accordingly, because Craig did not object to the admission of the evidence he now complains of on appeal when the evidence was admitted at trial, Craig admitted the same evidence

---

[4] We need not discuss the admission of the .380 pistol as evidence found and seized pursuant to the plain view exception to the search warrant requirement because it was one of the items described in the search warrant itself. *See* Search Warrant.

[5] With respect to Commonwealth's Exhibit 4, we need not discuss the admission of the shotgun as evidence found and seized pursuant to the plain view exception to the search warrant requirement because it was one of the items described in the search warrant itself. *See* Search Warrant.

16

through his own exhibits, and the evidence complained of was legally seized pursuant to the plain view exception to the search warrant requirement, we find Craig's contention that the Court improperly admitted such evidence devoid of merit. Therefore, we request that your Honorable Court dismiss this specific issue in ruling on Craig's appeal.

*Prejudicial Police Statements*

The sixth issue Craig raises on appeal turns on testimony elicited at trial by the Commonwealth's witnesses Oil City Police Chief Robert Wenner and Oil City Police Officer Cory Ruditis. Craig claims that the officers' testimony concerning Craig's intent was improperly admitted because the officers' statements were "so prejudicial that it denied [him the] presumption of innocense [sic]." Concise Statement of Matters Complained of on Appeal ¶ 6. Craig does not point to any specific statements that he contends prejudiced him. *Id.* Therefore, the Court is left to hazard a guess as to which statements he is referring to on appeal, which the Court does not have the authority to do. *See Pettus*, 860 A.2d at 164.

Nevertheless, to the extent that your Honorable Court wishes that this Court comment on this particular issue, we note that careful review of the trial transcripts reveals that Craig did not object to any statements made by Chief Robert Wenner or Officer Ruditis during direct examination.[6] *See* Trial Tr., 2/17/17, at 63-82, 116-24. This includes any statements made by the police officers as to his intent. *Id.* Again, we direct the parties', as well as your Honorable Court's, attention to the Pennsylvania Supreme Court's decision in *Commonwealth v. Williams*, wherein the High Court ruled that failure to make a timely objection at trial waives the appellant's right to assert an allegation of error as to that specific issue on appeal. 326 A.2d at 302. Because Craig

---

[6] The Court does note that Craig did object to an answer given by Chief Wenner during cross-examination wherein Chief Wenner characterized Craig as "paranoid." *See* Trial Tr., 2/17/17, at 112. We sustained Craig's objection. *Id.* at 112-13.

17

never made an objection as to the officers' alleged statements about his intent at trial, Craig is without recourse to challenge the same on appeal. Therefore, we conclude that this particular claim is meritless and we request that your Honorable Court find similarly in ruling on Craig's appeal.

*Prosecution's Reference to Facts not Established in Evidence*

In his seventh issue raised on appeal, Craig makes the bald allegation that the "[p]rosecutor's reference, during closing arguments, to facts not established in evidence denied [him the] presumption of innocense [sic]." Concise Statement of Matters Complained of on Appeal ¶ 7. Craig does not state which specific statement or statements he instantly complains of. Consequently, the wording of this issue calls upon the Court again to impermissibly hypothesize as to which specific statement or statements Craig takes issue with on appeal. *See Pettus*, 860 A.2d at 164; *cf. Commonwealth v. Smith*, 2008 Pa. Super. 179, 955 A.2d 391, 393 (2008) ("It has been held that when the trial court directs an appellant to file a concise statement of matters complained of on appeal, any issues that are not raised in such a statement will be waived for appellate review.... When the trial court has to guess what issues an appellant is appealing, that is not enough for meaningful review.") (internal quotation marks and citations omitted). Without more specificity from Craig as to the facts the District Attorney referenced that were not based in evidence, the Court cannot directly respond to this issue.

Nevertheless, we note that, despite our inability to directly respond to the specific issue Craig is trying to assert, Craig did not preserve this issue on appeal because he made no objection to any remarks District Attorney White made during closing argument at trial. *See* Trial Tr., 2/21/17, at 155-65. Pennsylvania appellate courts have repeatedly held that failure to timely object to an alleged error opposing counsel makes in his closing argument is waived on appeal. *See e.g.*, *Commonwealth v. Gillman*, 470 Pa. 179, 186, 368 A.2d 253, 256 (1977) ("A defendant may waive

18

his objection to an improper closing argument by failing to raise it at trial."); *Commonwealth v. Myrick*, No. 1633 EDA 2011, 2015 WL 7573467, at *4 (Jan. 20, 2015) (citing *Gillman* to conclude that appellant waived his challenge to the Commonwealth's closing argument because he failed to make a timely objection to the Commonwealth's closing argument at trial); *see also Williams*, 326 A.2d at 302. For this reason, we respectfully request that your Honorable Court dismiss this claim in ruling on Craig's appeal.

### *Prosecutor's Alleged Conflict of Interest*

In his eighth matter complained of on appeal, Craig contends that his convictions should be overturned because the prosecutor and his wife had non-financial interests in the above-captioned matter and, as a result, should have been disqualified from participating in this case. *See* Concise Statement of Matters Complained of on Appeal ¶ 8. The Court understands Craig to be challenging our Order of Court dated December 2, 2016, wherein we denied Craig's Motion to Disqualify Prosecutor because the evidence presented at the hearing on the matter did not support a finding that a conflict of interest exists between the District Attorney, or the District Attorney's Office generally, and Craig. *See* Order of Court, *Commonwealth v. Craig*, CR No. 480-2016 (Dec. 2, 2016). After careful review of the evidence presented at the hearing on Craig's Motion to Disqualify Prosecutor, the Court finds no reason to deviate from our original finding that no conflict of interest exists between District Attorney White, or the District Attorney's Office generally, and Craig.

Craig's original motion averred that a conflict of interest existed in this case "because of personal relationships shared by potential witnesses in this case and the family of the prosecutor, leading to a personal interest in the outcome of these prosecutions." Def.'s Mot. to Disqualify Prosecutor ¶ 15. Therefore, Craig requested a hearing on the motion to determine if District

19

Attorney White should be disqualified from prosecuting this case. Def.'s Mot. to Disqualify Prosecutor, Prayer for Relief.

The Court scheduled a hearing on the matter for December 2, 2016, at which time Craig appeared and was represented by his counsel of record at the time, Jeri Bolton, Esquire. District Attorney White appeared on behalf of the Commonwealth. At the hearing, Jenny Craig, Ruben Craig's wife, testified as well as District Attorney White's wife and paralegal Rebecca White. Jenny Craig testified that her daughter Alexis and the District Attorney's stepson Shawn dated for a period of five years and Alexis lived in the District Attorney's house for two years. N.T., 12/2/16, at 1. However, when asked for specific time frames of when and how frequently Alexis stayed at the District Attorney's house, she could not provide an answer. *Id.* Jenny Craig further testified that the District Attorney and his wife attended Alexis' graduation from high school in 2014 and that his wife also spoke with Jenny's mother about Alexis and Shawn. *Id.* Jenny also stated that the District Attorney's wife visited Jenny's mother's house on one occasion. *Id.* Jenny further testified that she believed the District Attorney and his wife had personal relationships with her family because her sister and mother attended the District Attorney's wife's family's annual party. *Id.* However, when asked if she had any evidence that the District Attorney or his wife ever attended this party, she responded "no." *Id.* at 2. Jenny subsequently claimed that the District Attorney's wife was present when she had a custody or dependency action against her mother in 2015. *Id.* After the custody hearing, Jenny testified that she filed private criminal complaints against her mother with the District Attorney's Office and she never received a response. *Id.*

Thereafter, Rebecca White testified that Alexis and her son Shawn dated from July 2011 until October 2015. N.T., 12/2/16, at 2. During this time period, Rebecca stated that Alexis started spending the night at the District Attorney's family home in August 2013 because Alexis had

transportation-related issues in getting to and from her place of employment. *Id.* Rebecca testified that Alexis only spent the night when she had work the next morning and that this arrangement ended when her son Shawn leased an apartment close to Alexis' work in November 2013. *Id.* Rebecca further testified that, to her knowledge, she's only visited Jenny's mother's house one time to take photographs of Alexis and Shawn before a school dance and one time when she picked Alexis up from Jenny's mother's residence to go shopping in Erie, Pennsylvania. *Id.* Rebecca stated that she was present at the Venango County Courthouse on the date of the alleged 2015 custody proceeding because she is routinely inside the courthouse for work. *Id.* at 3. She testified that she was not there in a support capacity for Jenny Craig's family and she did not attend or participate in any way at said proceeding. *Id.* Rebecca stated that, after her son and Alexis ended their relationship in October 2015, neither she nor the District Attorney had any further contact with Alexis or Alexis' family. *Id.* When asked about whether she attends her family's annual party, Rebecca stated that she has not attended since at least 2012 and that she is not close with that side of her family. *Id.* She also testified that the District Attorney had not attended the party since at least 2012 as well. *Id.* When asked if she recalled the District Attorney ever speaking to Jenny Craig's sister or Robert Nubauer, a witness for the Commonwealth, before the District Attorney's Office started investigating this case, she responded "no." *Id.* at 4. Lastly, when asked about whether she remembered the District Attorney's Office receiving Jenny Craig's private criminal complaints, she responded in the affirmative, but stated that she does not handle the complaints. *Id.* Moreover, Rebecca stated that, to her knowledge, the protocol for handling private criminal complaints in the Venango County District Attorney's Office is that a woman named Vickie in the District Attorney's Office would receive the complaints from the complainant. *Id.* Vickie would then give the complaint to an Assistant District Attorney for review. *Id.* Thereafter, the Assistant

District Attorney would determine whether to pursue criminal charges related to the private criminal complaints. Rebecca further stated that the District Attorney does not handle such matters. *Id.*

After hearing the testimony presented at the hearing, the Court made the following findings of fact on the record in open court:

1. Alexis, Jenny Craig's daughter, is not a part of nor a party to this case.

2. Shawn, the District Attorney's stepson, is not a part of nor a party to this case.

3. There are no other theoretical connections between the District Attorney, the District Attorney's family, and Craig's wife's family as there is no evidence that the District Attorney and his wife attended parties with Craig's wife's family nor regularly visited each other's houses.

4. The District Attorney's Office has nothing to do with custody or dependency proceedings.

*Id.* at 4. Based on our findings of fact, we found that no conflict of interest existed and, accordingly, denied Craig's motion. Upon review of the applicable legal authorities, we continue to find that neither District Attorney's nor his wife's – as a paralegal in the District Attorney's Office – involvement in this case created a conflict of interest between Craig and the District Attorney's Office.

It is well-settled that when a district attorney has a financial interest in the outcome of a prosecution, a conflict of interest exists which requires his disqualification from that specific prosecution. *See Commonwealth v. Eskridge*, 529 Pa. 387, 390-92, 604 A.2d 700, 701-02 (1992); *Commonwealth v. Lutes*, 2002 Pa. Super. 51, 793 A.2d 949, 956 (2002). Similarly, a district attorney may be disqualified for having "a non-economic, personal interest in the prosecution."

22

*Lutes*, 793 A.2d at 956 (citing *Commonwealth v. Balenger*, 704 A.2d 1385, 1389-90 (Pa Super. Ct. 1997) (affirming that the PCRA court properly granted defendant a new trial because the prosecuting assistant district attorney was carrying on a romantic relationship with defendant's girlfriend and pursued prosecution of the defendant to remove defendant as a competitor for the woman's affections))).

Applying the law to the facts of this particular case, there was no evidence presented to the Court to suggest that District Attorney White or anyone employed in the District Attorney's Office had a financial interest or a personal interest in the outcome of the above-captioned matter. The testimony provided by Jenny Craig at the hearing on Craig's Motion to Disqualify Prosecutor did not establish that the District Attorney or his wife had close personal relationships with members of her family or Ruben Craig's alleged attackers in the Memorial Day 2016 incident. Jenny Craig's testimony also did not establish that the District Attorney or his wife knew Ruben Craig. Although she testified that her mother, the District Attorney, and Rebecca White attended an annual party together, Jenny Craig stated that she had no evidence that the District Attorney or his wife ever attended these parties. In fact, this testimony was contradicted by Rebecca White's testimony that neither she nor the District Attorney had attended the annual party since at least 2012. All Jenny Craig could testify to was the fact that she saw the District Attorney's wife in the Venango County Courthouse in 2015, her daughter was in a relationship with the District Attorney's stepson for some unspecified period of time, that her daughter stayed at the District Attorney's home on unspecified dates because her daughter was in a relationship with the District Attorney's stepson, and that the District Attorney's wife went over to her mother's house to take photographs of the District Attorney's stepson and her daughter before a school dance. This evidence hardly establishes that the District Attorney and his wife were acquainted with Jenny Craig's relatives,

23

herself, or Ruben Craig, let alone does it establish that the District Attorney or his wife had the type of non-economic, personal interest in the outcome of this case contemplated by the *Lutes* or *Balenger* Courts.

Because Craig presented virtually no evidence to even hint that a conflict of interest existed in the above-captioned matter with respect to the District Attorney, or any employees of the District Attorney's Office, and Craig, we find Craig's eighth matter complained of on appeal meritless. We accordingly request that your Honorable Court find similarly and dismiss this issue in ruling on Craig's appeal.

*Delays During Proceedings Violated Established Protocols*

Next, Craig complains that "[d]elays during proceedings violated established protocols." *See* Concise Statement of Matters Complained of on Appeal ¶ 9. After making a concerted effort to ascertain what "delays" or "protocols" Craig is referring to, the Court could not even hazard a guess as to what constitutional or procedural claim Craig is trying to advance even if we had authority to do so. *See Smith*, 955 A.2d at 393; *Pettus*, 860 A.2d at 164. For this reason, we assert that the instant matter complained of on appeal, as written, does not constitute a cognizable claim. Therefore, we respectfully request that your Honorable Court find the same as to this issue and dismiss it on appeal.

*Alleged Brady Violations*

Craig's tenth issue raised on appeal reads: "*Brady* violations occurred with regards to certain witnesses." *See* Concise Statement of Matters Complained of on Appeal ¶ 10. In his Concise Statement, Craig does not aver how the alleged *Brady* violations occurred nor does he identify the witnesses to whom he is referring. *Id.* Because Craig has presented no evidence, either already on the record or that which is newly discovered, showing that District Attorney White or

24

the Venango County District Attorney's Office concealed favorable and material evidence from Craig before his trial, Craig's argument that a *Brady* violation occurred in this case fails.

The law governing *Brady* violations is well established. *See e.g., Strickler v. Greene*, 119 S. Ct. 1936, 527 U.S. 263 (1999); *United States v. Bagley*, 105 S. Ct. 3375, 473 U.S. 667 (1985); *Brady v. Maryland*, 83 S.Ct. 1194, 373 U.S. 83 (1963); *Commonwealth v. Edmiston*, 578 Pa. 284, 851 A.2d 883 (2004). According to the United States Supreme Court decision establishing the rule, a *Brady* violation occurs when a prosecutor violates a defendant's due process rights by suppressing or concealing evidence from the defendant that is favorable to the defendant, material to guilt or to punishment, and is that which defendant requested, irrespective of whether the prosecutor acted in good or bad faith. *Brady*, 373 U.S. at 87. After promulgating said rule, the United States Supreme Court broadened the scope of what constitutes a *Brady* violation by holding that a prosecutor has a duty to disclose favorable and material evidence to defendant *even if* the evidence has not been requested by the defendant. *United States v. Agurs*, 96 S. Ct. 2392, 2399, 427 U.S. 97, 107 (1976) (emphasis added). Moreover, on the question of materiality, the United States Supreme Court has noted that "[s]uch evidence is material 'if there is reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" *Strickler*, 527 U.S. at 280 (quoting *Bagley*, 473 U.S. at 682). In analyzing *Brady* and its progeny, the Pennsylvania Supreme Court aptly surmised that, "there are three necessary components that demonstrate a violation of the *Brady* strictures: the evidence was favorable to the accused, either because it is exculpatory or because it impeaches; the evidence was suppressed by the prosecution, either willfully or inadvertently; and prejudice ensued." *Commonwealth v. Burke*, 566 Pa. 402, 781 A.2d 1136 (2004).

Importantly, however, both federal and state courts note that the duty imposed upon prosecutors by *Brady* is not all encompassing. *See e.g., Kyles v. Whitley*, 115 S. Ct. 1555, 1567, 514 U.S. 419, 436-37 (1995) ("[T]he Constitution is not violated every time the government fails or chooses not to disclose evidence that might prove helpful to the defense .... We have never held that the Constitution demands an open file policy ...."); *Weatherford v. Bursey*, 97 S. Ct. 837, 846, 429 U.S. 545, 559 (1977) ("There is no general constitutional right to discovery in a criminal case, and *Brady* did not create one...."); *Edmiston*, 851 A.2d at 887 n. 3 (defendant has no general right under the Constitution or *Brady* to search Commonwealth files); *Commonwealth v. Counterman*, 553 Pa. 370, 719 A.2d 284, 297 (1998), *cert. denied*, 120 S. Ct. 97, 528 U.S. 836 (1999) (*Brady* is not a general rule of discovery in criminal cases). In fact, in the cases in which a Pennsylvania appellate court has found a *Brady* violation to have occurred, the defendant has presented the court with evidence that the prosecution failed to disclose material evidence favorable to the defendant and the non-disclosure resulted in prejudice to the defendant at trial. *See e.g., Commonwealth v. Johnson*, No. 713 CAP, ____ A.3d ____, 2017 WL 6497094, at *3-7 (Dec. 19, 2017) (finding that defendant was entitled to a new trial because newly discovered police reports found by defendant's appellate counsel proved that the Commonwealth committed a *Brady* violation in that the Commonwealth failed to disclose police reports that contained impeachment evidence concerning the Commonwealth's star witness); *Commonwealth v. Strong*, 563 Pa. 455, 470, 761 A.2d 1167,1175 (2000) (holding that a *Brady* violation occurred after defendant's post-conviction relief counsel obtained letters proving that an agreement existed between the Commonwealth's witness and the district attorney's office after the assistant district attorneys prosecuting the case stated to the defendant and his counsel before trial that no such agreement existed).

Unlike in *Johnson* and *Strong*, Craig has not pointed to any evidence whatsoever that tends to establish that District Attorney White or anyone else who assisted in prosecuting the instant case suppressed or concealed **any** evidence from him let alone evidence that was both favorable to him and material to his case. Accordingly, we conclude that Craig's instant *Brady* violation claim is meritless as he has failed to prove the elements necessary to establish such a claim. We, therefore, respectfully request that your Honorable Court dismiss this claim on appeal.

*References to Shotgun as "Tactical" and "Modified" were Irrelevant, Inaccurate, and*

*Prejudicial*

Next, Craig appears to argue that your Honorable Court should overturn his convictions in the above-captioned matter because allowing witnesses and the District Attorney to refer to the shotgun retrieved from Craig's residence as "tactical" and "modified" was "irrelevant, inaccurate, and unduly prejudicial" and, therefore, constituted judicial error. *See* Concise Statement of Matters Complained of on Appeal ¶ 11. We disagree noting that Craig never objected to relevance, improper characterization, or undue prejudice at trial when the shotgun was described in such a manner. *See* Trial Tr., 2/17/17, at 76-8, 97-9; Trial Tr., 2/21/17, at 158.

For disposition of this issue, we again direct the parties', as well as your Honorable Court's, attention to the Pennsylvania Supreme Court's *Williams* decision, wherein the High Court held that allegations of error fail on appeal when the same error was not timely objected to at trial. *Williams*, 326 A.2d at 302. At the time Chief Wenner described the shotgun as "modified" and the load contained therein as "tactical" during direct examination, Craig did not object to relevance, improper characterization, or prejudice. *See* Trial Tr., 2/17/17, at 76-8, 97-9. Instead, Craig cross-examined Chief Wenner on his description of the shotgun, drawing more attention to the fact that Chief Wenner described the shotgun as "modified" and the load it carried as "tactical." *Id.* at 97-

27

9. The only other times the shotgun was described as "modified" or "tactical" were when District Attorney White gave his opening statement and his closing argument. *See id.* at 26-31; Trial Tr., 2/21/17, at 158. When District Attorney White used these words to describe the shotgun and the load it was filled with, Craig did not object to their use on the grounds of relevance, improper characterization, or prejudice when District Attorney White uttered them. Trial Tr., 2/17/17, at 26-31; Trial Tr., 2/21/17, at 158. Moreover, Craig did not object to such descriptions after District Attorney White finished giving his opening statement or his closing argument.[7] Trial Tr., 2/17/17, at 31-2; Trial Tr., 2/21/17, at 165.

Because Craig failed to make timely objections as to the characterization of the shotgun as "modified" and "tactical," his argument as to this issue raised on appeal lacks merit. Accordingly, we urge your Honorable Court to declare the same in ruling upon Craig's instant appeal.

### *Inappropriate Ruling as to Defendant's Motion to Return of Property*

In his twelfth matter complained of on appeal, Craig merely contends that, "[r]uling not to return property was inappropriate." Concise Statement of Matters Complained of on Appeal ¶ 12. Craig is referring to our ruling denying his motion to return the .380 pistol and 12-guage shotgun after the jury verdict was announced. *See* Trial Tr., 2/21/17, at 193-94. After the jury verdict was recorded in the above-captioned matter, Craig orally motioned the Court to return both firearms. *See id.* at 193. The Commonwealth responded that returning said property should not be allowed as the firearms are going to continue to be used as evidence in this matter because they were seized

---

[7] We would also note that, to the extent Craig challenges use of the term "modified" to describe the shotgun, he stated the following at the Court's hearing on Defendant's Motion to Reconsider Motion *in Limine*/Colloquy Regarding Counsel: "I would like to limit the prosecution's use of the term 'sawed off shotgun.' In a sense that a sawed off shotgun is a legal term meaning a shotgun less than eighteen (18) inches and instead of using sawed of shotgun which is prejudicial, I would like him if he needs to refer to it as a legally modified shotgun and since it has no relevance to this case because I am not actually accused of modifying it." Defendant's Mot. to Reconsider Motion *in Limine*/Colloquy Regarding Counsel, 2/16/17, at 36. Craig's suggestion that District Attorney White refer to the shotgun as modified disproves Craig's argument that the term "modified" is irrelevant, inaccurate, and unduly prejudicial.

as illegal contraband and that the Commonwealth will seek forfeiture of the firearms when this matter is concluded. *Id.* at 194. We subsequently denied Craig's motion. *Id.* After careful review of the applicable legal authorities, we conclude that our Order denying Craig's motion was proper given the facts of this case.

The Pennsylvania Commonwealth Court aptly summarized the dearth of precedential case law concerning motions to return property as follows:

> Proceedings for return of property are distinct from a forfeiture proceeding. *Petition of Koenig,* 444 Pa. Super. 163, 663 A.2d 725 (1995). It is well settled that a proceeding seeking the return of property is quasi-criminal in character, but it is civil in form. *Commonwealth v. Reynolds,* 876 A.2d 1088 (Pa. Cmwlth. 2005). Unlike forfeiture actions, proceedings for the return of property arise under our Rules of Criminal Procedure. *Grossman v. Comm'r of Police,* 318 Pa.Super. 584, 465 A.2d 1007 (1983). More specifically, motions to secure the return of property seized by police are initiated pursuant to Pa. R.Crim. P. 588. Under this rule, on any motion for return of property, the moving party must establish by a preponderance of the evidence entitlement to lawful possession. Once the moving party provides sufficient proof, the burden shifts to the Commonwealth to resist the return of property by proving the property is contraband. *Commonwealth v. Crespo,* 884 A.2d 960 (Pa. Cmwlth. 2005).

*Commonwealth v. Johnson,* 931 A.2d 781, 783-84 (Pa. Cmwlth. 2007). To establish the defendant's burden of entitlement to lawful possession of the property, a mere allegation of entitlement may be sufficient. *Commonwealth v. Younge,* 446 Pa. Super. 541, 545, 667 A.2d 739, 741-42 (1995). However, "a prerequisite for seeking return of property is an ownership interest by the person who files the petition [or makes the motion]." *In re Firearms, Eleven,* 2007 Pa. Super. 89, 922 A.2d 906, 912 (2007) (ruling that a defendant charged with Persons Not to Possess Firearms, in violation of 18 Pa. C.S.A. § 6105, was not entitled to return of firearms because she asserted that she did not own the firearms on the record).

In the present case, Craig made the motion claiming that the .380 pistol was the property of Jenny Craig, not himself. *See* Trial Tr., 2/21/17, at 193. Furthermore, he did not make a

29

statement that the shotgun he seeks to be returned belonged to him. *Id.* at 193-94. Rather, during trial, Craig testified that he did not legally own the shotgun or pistol because, as a felon, he could not do so. *Id.* at 129-132. Moreover, Commonwealth's Exhibit 1, which is a certified copy of Craig's prior conviction for aggravated assault, establishes that Craig fits within the definition of persons not to possess or own firearms pursuant to 18 Pa. C.S.A. § 6105. Thus, Craig cannot own any firearms pursuant to state law and, therefore, cannot prove that he, as the moving party, is entitled to lawful possession of the aforementioned firearms.

Because Craig has not meet his burden of showing that he is legally entitled to possess the firearms, this matter complained of on appeal is meritless. Therefore, we respectfully request your Honorable Court affirm our Order denying Craig's motion for return of property.

### Right to Bear Arms

In his last matter complained of on appeal, Craig contends that his convictions should be overturned because prosecution for the offenses charged violated his "inalienable right to bear arms." Concise Statement of Matters Complained of on Appeal ¶ 13. We understand Craig's argument to be challenging the application of 18 Pa. C.S.A. § 6105 as to him in light of the constitutional right to bear arms afforded to Pennsylvania citizens under the Second Amendment of the United States Constitution and Article 1, § 21 of the Pennsylvania Constitution. We disagree that Craig has an "inalienable" constitutional right to bear arms and that application of 18 Pa. C.S.A. § 6105 in this case violated this constitutional right.

Both the United States Supreme Court and Pennsylvania appellate courts have opined that the right to keep and bear arms is not absolute and governmental restrictions on possession of firearms are permitted. *See e.g, District of Columbia v. Heller*, 128 S. Ct. 2783, 2816-17, 554 U.S. 570, 626-27 (2008) (opining that the Second Amendment does not bestow upon individuals an

30

absolute right to bear arms); *Commonwealth v. McKnown*, 2013 Pa. Super. 282, 79 A.3d 678, 690 (2013) (opining the same with respect to Article 1, § 21 of the Pennsylvania Constitution). In assessing governmental restrictions on ownership, use, and possession of firearms, it appears that the constitutional right to bear arms is not violated if the governmental restriction withstands the test of intermediate scrutiny. *See McKnown*, 79 A.3d at 690 (applying intermediate scrutiny to § 6106 of the Pennsylvania Uniform Firearms Act when defendant premised his challenge of the section on his right to bear arms guaranteed by the United States Constitution and Pennsylvania Constitution); *see also United States v. Mazerella*, 614 F. 3d 85, 96 (3d Cir. 2010) (applying intermediate scrutiny to a federal statute which made it illegal to possess a firearm with an obliterated serial number). A governmental restriction satisfies the intermediate scrutiny standard of review when the restriction is substantially related to achieving an important governmental interest. *McKnown*, 79 A.3d at 690.

In promulgating the Pennsylvania Uniform Firearms Act, a section of which Craig instantly takes issue with, the Pennsylvania General Assembly stated that the Act's provisions are designed to:

> provide support to law enforcement in the area of crime prevention and control without placing any undue or unnecessary burdens on law-abiding citizens with respect to the acquisition, possession, transfer, transportation or use of firearms, rifles, or shotguns for personal protection, hunting, target shooting, employment or any other lawful activity.

Act of June 13, 1995, P.L. 1024, No. 17 (Spec. Sess. No. 1), § 2 (H.B. 110). The General Assembly made clear that the purpose of the Act was not to provide for sweeping restrictions on firearms ownership:

> [The Act] is not intended to discourage or restrict the private Ownership and use of firearms by law-abiding citizens for lawful purposes, or to provide for the imposition by rules or regulations of any procedures or requirements other than those necessary to implement and effectuate the provisions of this Act.

31

*Id.* Analyzing the General Assembly's above-stated purpose and scope for the Act as well as federal case law concerning Second Amendment challenges to statutory firearms restrictions, the Pennsylvania Superior Court declared § 6106 of the Pennsylvania Uniform Firearms Act constitutional under both federal and state constitutions because:

> restrictions in section 6106 serve to protect the public from persons who carry concealed firearms for unlawful purposes, an important governmental interest, and we agree with the trial court that this section is substantially related to the achievement of that objective. Any impact on the Second Amendment is narrowly tailored toward achieving the important governmental interest.

*McKnown,* 79 A.3d at 690. With respect to the Pennsylvania Constitution, the *McKnown* Court iterated the Pennsylvania Supreme Court's sentiment that:

> Probably the most important function of government is the exercise of the police power for the purpose of preserving the public health, safety and morals, and it is true that, to accomplish that purpose, the legislature may limit the enjoyment of personal liberty and property. It is also true, as stated in *Commonwealth v. Zasloff,* 338 Pa. 457, 460, 13 A.2d 67, 69, 128 A.L.R. 1120, that the police power has been juridically [sic] extended to many fields of social and economic welfare. But, as likewise there stated, the power is not unrestricted; its exercise, like that of all other governmental powers, is subject to constitutional limitations and judicial review.

*Id.* (quoting *Gambone v. Commonwealth,* 375 Pa. 547, 101 A.2d 634, 636-37 (1954)).

In line with the Superior Court's decision in *McKnown,* we find that 18 Pa. C.S.A. § 6105 also withstands the test of intermediate scrutiny. Like § 6106, § 6105 of the Pennsylvania Uniform Firearms Act serves the important governmental interest of preserving public safety by restricting access to firearms. Specifically, § 6105 of the Pennsylvania Uniform Firearms Act prohibits those who have already committed certain enumerated, violent, felonies and those who have committed specific misdemeanors from possessing and owning firearms. *See* 18 Pa. C.S.A. §§ 6105(b), (c). Moreover, the statute does not serve as an absolute bar to firearms ownership or possession for two reasons: (1) it only applies to those individuals who possess firearms within the

32

Commonwealth of Pennsylvania and (2) the statute provides certain individuals, who would ordinarily be prohibited from owning or possessing firearms under this statute, with the opportunity to receive an exemption from being subject to the statute's firearms restriction. 18 Pa. C.S.A. §§ 6105(a), (d). Thus, the statute, by its terms, is not unduly restrictive on an individual's right to bear arms guaranteed by the United States Constitution and the Pennsylvania Constitution.[8]

Because we find that 18 Pa. C.S.A. § 6105 satisfies the intermediate scrutiny standard of review and, therefore, is constitutional, we conclude that Craig's instant claim lacks merit. Therefore, we respectfully request that your Honorable Court find similarly and affirm Craig's convictions in the above-captioned matter.

## Conclusion

After analyzing all of the matters Craig complains of on appeal, we conclude that Craig has not presented any meritorious claims in his Concise Statement of Matters Complained of on Appeal. Accordingly, we respectfully request that your Honorable Court affirm Craig's convictions in the above-captioned matter and dismiss his instant appeal.

BY THE COURT,

_____
Oliver J. Lobaugh, President Judge

cc:   DA (D.S. White, Esq.)
      Ruben Craig

---

[8] To the extent that your Honorable Court finds that strict scrutiny applies to § 6105, we note that the statute also passes muster under that standard. A statute satisfies the strict scrutiny standard of review when the statute is narrowly tailored to further a compelling state interest. *DePaul v. Commonwealth*, 600 Pa. 573, 597, 969 A.2d 536, 551 (2009). As noted *supra*, probably the most important function of government is the exercise of the police power to preserve public safety. *Gambone*, 101 A.2d at 636-37. Thus, protecting the public is a compelling state interest. Section 6105 is narrowly tailored to further this compelling state interest because the statute only prevents arguably the most dangerous people in society (certain previously convicted felons, those previously convicted of specific misdemeanors, and those currently violating the law) from owning or possessing one type of lethal weapon: firearms.

33